FRIEDMAN v DOZORC

Docket Nos. 61534, 61547. Argued October 2, 1979 (Calendar No. 2).—
Decided November 23, 1981.

Seymour Friedman, M.D., brought an action against Peter Dozorc
and Robert H. Golden, attorneys, for damages arising from
being compelled to defend himself against a medical malprac-
tice action brought by a plaintiff who was represented by
Dozorc and Golden. The medical malpractice action, for the
death of Leona Serafin, resulted in a directed verdict for Dr.
Friedman, which was affirmed on appeal. The plaintiff physi-
cian alleged that an attorney owes a duty to an opponent in a
lawsuit to avoid negligence in pursuing his client's claims. He
also alleged that the civil proceedings against him constituted
malicious prosecution because the attorneys had a duty to
investigate the facts and law for their client before bringing a
lawsuit against him, and that the defendant attorneys were

REFERENCES FOR POINTS IN HEADNOTES

[1, 4-6, 9] 7 Am Jur 2d, Attorneys at Law § 232.
  Attorney's liability, to one other than his immediate client, for
  consequences of negligence in carrying out legal duties. 45 ALR3d
  1181.
[2] 57 Am Jur 2d, Negligence §§ 9, 34.
[3] 7 Am Jur 2d, Attorneys at Law §§ 147, 197, 202.
[4] 7 Am Jur 2d, Attorneys at Law §§ 184, 198.
[7] [No Reference]
[8, 9] 57 Am Jur 2d, Negligence § 37.
[10] 1 Am Jur 2d, Abuse of Process § 4.
  Civil liability of attorney for abuse of process. 97 ALR3d 688.
[11] 1 Am Jur 2d, Abuse of Process §§ 2, 21.
[12, 13] 52 Am Jur 2d, Malicious Prosecution §§ 9-11.
[14] 52 Am Jur 2d, Malicious Prosecution §§ 29, 45, 50.
[15] 52 Am Jur 2d, Malicious Prosecution § 159.
[16] 52 Am Jur 2d, Malicious Prosecution § 72.
[17] 52 Am Jur 2d, Malicious Prosecution §§ 51, 53.
  Liability of attorney acting for client, for false imprisonment or
  malicious prosecution of third party. 27 ALR3d 1113.
[18] 7 Am Jur 2d, Attorneys at Law § 56.
[19] 52 Am Jur 2d, Malicious Prosecution § 141.
[20] 52 Am Jur 2d, Malicious Prosecution §§ 152, 159.

guilty of abuse of process in that they intended to coerce the plaintiff into settling a groundless malpractice claim in order to obtain a contingent fee in the matter. The Oakland Circuit Court, Frederick C. Ziem, J., granted summary judgment for the defendants on the ground that the plaintiff had not stated a cause of action. The Court of Appeals, D. C. Riley, P.J., and D. F. Walsh and A. C. Miller, JJ., reversed and remanded for further proceedings on the count of malicious prosecution (Docket No. 31244). The parties appeal.

In an opinion by Justice Levin, joined by Justices Kavanagh, Williams, and Ryan, the Supreme Court *held:*

An attorney owes no duty of care to an adverse party in litigation. The plaintiff has also failed to state a claim for abuse of process because there is no allegation that the defendants committed an irregular act in the use of process, and has failed to state a claim for malicious prosecution because he did not allege the element of special injury necessary to that cause of action.

1. The plaintiff argues that the Code of Professional Responsibility and the General Court Rules of 1963 create a duty in an attorney to his client's adversary and all other foreseeable third parties to conduct a reasonable investigation of the facts and law so that he has an adequate basis for a good-faith belief that the client has a tenable claim, and a duty to act within the bounds of the law and thus to refrain from asserting frivolous claims. "Duty" concerns the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other. Assuming that an attorney has an obligation to his client to conduct a reasonable investigation before bringing an action, that obligation is not the functional equivalent of a duty of care owed to the client's adversary; such a duty of care is inconsistent with the basic precepts of the adversary system.

2. The duty owed to a client by an attorney as an advocate and adviser is broader than the obligation of reasonable investigation. It is likely that, if a duty to the attorney's adversary were imposed, an attorney would be faced with a case in which it would be in the client's best interest to proceed in one way and in the adversary's best interest to proceed in another way. Creation of a duty in favor of an adversary would create a conflict of interest which would seriously hamper an attorney's effectiveness as counsel for his client, and the attorney's justifiable fear of being sued for negligence would detrimentally interfere with the attorney-client relation. The conflict of interest could not be resolved simply by allowing the attorney to

resolve all doubts in favor of the client, because the existence or reasonableness of the doubts might themselves become questions for the jury.

3. There is a public policy of encouraging free access to the courts. Recognition of a cause of action for negligence in favor of a client's adversary might unduly inhibit attorneys from bringing close cases or advancing innovative theories, or taking action against defendants who can be expected to retaliate. The adversary system intends, and expects, lawyers to search for a more efficacious remedy, or a more successful defense.

4. The plaintiff argues that the doctrine of privity of contract has slowly been eroded in Michigan and no longer imposes a bar to the liability of a professional person to third parties who the professional could reasonably foresee would rely on the professional person's conduct. However, the decision in this case does not rely on the doctrine of privity of contract but on the public policy respecting the attorney's role in the adversary system and the importance of preserving free access to the courts. The plaintiff also argues that attorneys ought to be liable for negligence to all foreseeable third parties, and that reliance or intended benefit are not factors. Reliance is an appropriate factor to be considered in deciding whether a duty is owed to another party by a professional. In this case, there can be neither reliance by the plaintiff, nor benefit intended by the defendants or their client flowing to the plaintiff, because the relation of the parties is adversarial.

5. To recover for the tort of abuse of process the plaintiff must plead and prove, in addition to damages, that the defendant had an ulterior purpose and that there was an act in the use of process which is improper in the regular prosecution of the proceeding. The plaintiff in this case has failed to allege that the defendants committed some act that is irregular in the use of process. The only act that the plaintiff alleges is the issuance of a summons and complaint in the malpractice action, but a summons and complaint are properly used for the institution of a civil suit. The action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.

6. Special injury, in the nature of an interference with person or property, remains an essential element of the tort of malicious prosecution of civil proceedings. No decision of the Court holds that an action for malicious prosecution of civil proceedings can be maintained absent special injury, whatever the precise boundaries of that concept. The requirement of special injury should be retained to limit the circumstances in which

an action for the malicious prosecution of civil proceedings can be maintained.

7. Three reasons are commonly advanced for adhering to the rule that requires special injury: 1) costs to the prevailing party are intended as the exclusive remedy for damages caused by wrongful litigation, 2) an unrestricted tort of wrongful civil proceedings will deter honest litigants, and 3) recognition of the tort action would produce interminable litigation. These reasons have been criticized, but they retain validity.

8. Expanding the availability of such an action would not merely provide a remedy for those defendants required to defend groundless actions for medical malpractice, but would arm all prevailing civil defendants with an instrument of retaliation, whether the prior action sounded in tort, contract, or another area of law. That would be a remedy which is too strong for the affliction which it is intended to cure. Even if the plaintiff and his attorney have abundant cause for bringing and continuing an action and act without malice, the foreseeable expense and annoyance of even a successful defense of a countersuit might induce them to abandon a problematic claim or to settle the case for less than they would otherwise accept.

9. The prospect of a large verdict including damages for lost business, injury to reputation, and emotional distress will loom large indeed, especially since many parties or their attorneys do not have or are unable to obtain insurance against such liability. The cost of insurance for legal malpractice is bound to increase, assuming that coverage against such liability is available. Permitting a tort action for wrongful civil proceedings absent special injury to the plaintiff could easily generate a significant number of such actions. The cure for an excess of litigation is not more litigation. Meritorious as well as frivolous claims are likely to be deterred. There are sure to be parties who would use the courts and such an expanded tort recovery as a retaliatory or punitive device without regard to the likelihood of recovery or who seek a means of recovering the actual costs of defending the first action without regard to whether it was truly vexatious.

10. The Legislature could create a special cause of action in favor of physicians without the imposition of a general cause of action for wrongful civil proceedings. However, no court has been persuaded that a principled distinction could be drawn on the ground that injury to the reputation of a doctor is a special injury warranting solicitude not accorded other aggrieved litigants.

11. The elements of a tort action for malicious prosecution of

civil proceedings, in addition to special injury, are the termination of prior proceedings in favor of the present plaintiff, the absence of probable cause for bringing those proceedings, and malice, or a purpose other than that of securing the proper adjudication of the claim. The absence of probable cause in bringing a civil action may not be established merely by showing that the action was successfully defended. To require an attorney to advance only those claims that will ultimately be successful would place an intolerable burden on the right of access to the courts. Time will not always permit a reasonable investigation and industrious search by legal authority before the lawyer must file a complaint to preserve the client's claim. In medical malpractice actions the facts relevant to an informed assessment of the defendant's liability may not emerge until well into the process of discovery. An attorney's evaluation of the client's case should not be inhibited by the knowledge that perseverance may place the attorney personally at risk; the next fact or the next medical opinion which the attorney encounters may be the one that makes the case. A lawyer may proceed in the good-faith belief that his proofs will establish a prima facie case of medical malpractice without expert testimony, only to find that the court disagrees. Such conduct is not the equivalent of proceeding without probable cause.

12. Whether an attorney acted without probable cause in initiating, defending, or continuing proceedings on behalf of a client should not normally depend upon the extent of the investigation conducted. The Code of Professional Responsibility does not expressly impose any duty upon a lawyer to conduct an independent investigation of the merits of a client's claim. He is entitled to accept his client's version of the facts and to proceed on the assumption that they are true absent compelling evidence to the contrary. Whether a lawyer abused his duty to represent his client's interests zealously is not a matter of what a hypothetical reasonable practitioner would have done in the same circumstances, but of whether the lawyer's conduct was beyond the limits of reason or the bounds of the law although another lawyer might not have acted similarly.

13. One who takes an active part in the initiation, continuation, or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based and either correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or believes to this

effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information. Lack of probable cause may be found where the lawyer proceeded with knowledge that the claim had no factual or legal basis, but there is no obligation to investigate if the lawyer could reasonably believe the facts to be as the client alleged.

14. The rule that malice may be inferred from the facts that establish want of probable cause, although the jury is not required to draw that inference, was developed in cases where damages were sought from a layperson who initiated proceedings. The rule fails to make sufficient allowance for the lawyer's role as advocate and should not be applied in determining whether a lawyer acted for an improper purpose. A finding of an improper purpose on the part of the unsuccessful attorney must be supported by evidence independent of the evidence establishing that the action was brought without probable cause.

The decision of the Court of Appeals is affirmed as to the claims sounding in negligence and abuse of process and is reversed as to the claim for malicious prosecution of civil proceedings.

Justice Levin, joined by Justice Williams, also wrote separately to advocate a new remedy, a court rule, to provide an appropriate measure of deterrence against wrongful litigation and reasonable compensation for wronged litigants without imperiling the right of free access to the courts. There is already a court rule providing for an award of reasonable expenses, including attorney fees, incurred in proving or disproving unwarranted denials or allegations in pleadings. The Court should recognize the inadequacy of existing provisions for the taxation of costs and adopt a court rule authorizing the trial judge to order the payment of the prevailing party's actual expenses, including reasonable attorneys' fees and limited consequential damages, where the action was wrongfully initiated, defended, or continued. The factual issues would be resolved after a prompt post-termination hearing at which the parties could call witnesses and they and their attorneys could testify. The standard to be applied would be whether the losing party or his attorney had proceeded without probable cause and for an improper purpose. The award of fees and expenses should be limited to those incurred after the action should have been discontinued or liability admitted. Such a rule would permit a prompt remedy without the difficulties and delay inherent in a subsequent tort action.

Chief Justice Coleman, joined by Justice Fitzgerald, agreed

that the plaintiff had failed to state actionable claims under theories of negligence or abuse of process, but dissented as to the requirement of special injury in cases of malicious prosecution.

1. Special injury is said to be required in order to limit the circumstances in which an action for the malicious prosecution of civil proceedings can be maintained. The problem with that reasoning is that it relies on an incidental effect of the special-injury requirement. It is nowhere contended that the requirement of special injury serves to distinguish meritorious from frivolous litigation. Nor is there a contention that special injury is more egregious than other injury. The opinion is comprehensible only because of an unstated, although correct, premise: most litigation does not involve special injury. This use of the special-injury requirement has two results. First, in cases in which no special injury can be alleged, the injury which is not special caused by even the most frivolous litigation cannot be compensated. Second, if the Court's reasoning is correct, meritorious claimants may be deterred from raising their claims in cases where the potential defendants would be able to allege special injury in a subsequent malicious prosecution case. Meritorious and frivolous claims are protected alike when no special injury can be alleged, but neither is protected when an allegation of special injury might be made; the arguments that the Court advances in favor of the requirement have no connection with the content of the requirement. A more reasonable approach would be to look to other elements of the action for malicious prosecution, such as a lack of probable cause and an improper motive, to provide the necessary protection for bona fide litigants.

2. The issue here is not finding a cure for excessive litigation. It is whether the harm caused by wrongful litigation is compensable. For any given tort there probably are means other than a lawsuit for deterring its commission. However, the fact that unsuccessful suits for malicious prosecution may be brought should not be given added importance in deciding whether a tort cause of action should be expanded simply because the wrong to be compensated is itself a lawsuit.

3. Central to the case is the judicial process of weighing the harm which could be caused by groundless suits for malicious prosecution against the harm caused by all other groundless litigation. In upholding the special-injury requirement for malicious prosecution cases the Court gives little, if any, consideration to the harmful effects of other kinds of groundless litiga-

tion. The Court leaves lawyers, in most cases, free from the concern of defending one kind of case, at the expense of subjecting the rest of society to many kinds of groundless litigation without recompense. The one-sidedness of the treatment is especially apparent with respect to the argument that defending groundless actions for malicious prosecution might increase the cost of legal malpractice insurance. The effect that another type of groundless litigation may already be having on medical malpractice insurance is overlooked. Prediction of how suits for malicious prosecution might affect insurance is speculative at best; however, one would not expect that the adverse effects of the threat of groundless lawsuits would affect attorneys to a greater extent than any other defendants.

4. The elements of lack of probable cause and improper motive are narrow in scope and not easily shown. Frivolous claims of malicious prosecution would likely show their frivolous nature more clearly than other frivolous claims. Attorneys are in a better position than other persons to recognize groundless litigation and thereby to limit the extent to which the fear of frivolous actions for malicious prosecution affects their conduct.

5. The Court also suggests that some attorneys would specialize in actions for malicious prosecution and perhaps file them indiscriminately. If that were true, one would expect that they would be no less hesitant to file groundless lawsuits against members of other professions. A viable action for malicious prosecution is necessary to give substance to the attorney's duty not to bring frivolous litigation. The Court's concern should be with preserving free access to the courts for meritorious claims, rather than denying it for persons who have suffered harm, but not special injury, from wrongful litigation.

Justice Moody also agreed with the decision as to negligence and abuse of process, but dissented as to the requirement of special injury as an element of the action for malicious prosecution.

1. The Court has not distinctly recognized a cause of action for malicious prosecution without special injury, nor has it specifically adopted the requirement of special injury. The concept of special injury has been somewhat expanded without a specific adoption or rejection of it. The duty to interpret the common law in light of present circumstances and changed conditions rests with the Court. Even if the requirement of special injury may be considered a part of Michigan's jurisprudence, the Court may abrogate common-law rules.

2. In this case the Court is presented with the opportunity to

adopt or reject the requirement. The requirement of special injury limits the potential recovery for malicious prosecution of civil proceedings and thereby protects the right of free access to the courts. However, the limitation is too broad; suits arising out of meritorious as well as vexatious actions are disallowed.

3. The special-injury requirement is not logically related to the damages actually incurred by the defendant as a result of a frivolous suit. The injury to reputation or business flowing from any defamatory matter alleged and the expense of defending a lawsuit which was brought without probable cause and for an improper purpose do not depend on an interference with the defendant's person or property. The requirement of an arrest or seizure of property is in large part an anachronistic one. The Revised Judicature Act abolished the writ of *capias ad respondendum*, which permitted a civil action to be commenced by the arrest of the defendant. The law concerning the availability of attachment and garnishment has also changed. Thus, the likelihood of "special injury" occurring in a lawsuit has been greatly reduced.

4. If a person is maliciously injured in his credit and reputation, and his business is lessened or broken up, it can make no difference in his right to recover for the injury that his person or property has not been seized or disturbed. The strict requirement of lack of probable cause and malice, *i.e.*, improper purpose, are more appropriate guardians of the right to free access to the courts and of the honest use of the judicial process to redress the harm caused by the abuse of it than the artificial requirement of special injury.

5. The delicate relation among attorneys, clients, and the judicial system requires a careful definition of the elements of probable cause and improper purpose when attorneys are sued for malicious prosecution. A standard of reasonable belief in the existence of the facts of the claim and in its validity under the applicable law is applicable to the attorney for a plaintiff. Probable cause will be found for bringing or continuing the action unless the plaintiff's counsel proceeded with the knowledge that the client's claim had no factual or legal basis.

6. There should be no requirement that an attorney investigate a claim if he could reasonably believe the facts to be as alleged by the client. In complying with the duties to make legal counsel available and to represent a client zealously within the bounds of the law an attorney should be prepared to represent clients with doubtful, but tenable, claims. The threat of liability for wrongful use of civil proceedings must not force

an attorney to choose between advancing substantial costs to investigate a claim with some merit and refusing to take it.

7. The jury resolves any conflict in the underlying facts and then the judge determines whether the facts constitute probable cause. A jury may infer malice or improper purpose from an absence of probable cause when the defendant is a layperson. However, the lawyer's duty to press his client's claim requires an independent determination of improper purpose; the lawyer is not liable for malicious prosecution if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of the claim.

83 Mich App 429; 268 NW2d 673 (1978) affirmed in part.

OPINION OF THE COURT

1. ATTORNEY AND CLIENT — NEGLIGENCE — THIRD PARTIES.

An attorney owes no actionable duty of care to an adverse party in litigation.

2. NEGLIGENCE — DUTY — WORDS AND PHRASES — COMMON LAW — QUESTION OF LAW.

Whether the defendant in a negligence action owed an actionable duty to the plaintiff is a question of law which a court decides after assessing the competing considerations of policy for and against recognizing the asserted duty.

3. ATTORNEY AND CLIENT — DUTY.

An attorney owes a client a duty which is broader than the obligation of reasonable investigation before bringing a civil action on the client's behalf, and which concerns decisions made on behalf of, often in consultation with, the client regarding the manner of proceeding with the client's cause.

4. ATTORNEY AND CLIENT — NEGLIGENCE — THIRD PARTIES — CONFLICT OF INTEREST.

An attorney ought not to be held liable to the adverse party in a civil proceeding for negligence in beginning or continuing the lawsuit on behalf of a client because the creation of a duty in favor of an adversary would create a conflict of interest which would seriously hamper the attorney's effectiveness as counsel for his client.

5. ATTORNEY AND CLIENT — NEGLIGENCE — THIRD PARTIES.

The public policy of maintaining a vigorous adversary system outweighs the asserted advantages of finding a duty of care owing to an attorney's opponent in litigation.

6. ATTORNEY AND CLIENT — NEGLIGENCE — THIRD PARTIES.

Recognition of an action by an adverse party against an attorney for negligence in bringing a civil action on behalf of a client might unduly inhibit attorneys from bringing close cases or advancing innovative theories, or taking action against defendants who can be expected to retaliate, and would work against the public policy of encouraging free access to the courts.

7. ATTORNEY AND CLIENT — COMMON LAW.

The adversary system intends and expects lawyers to probe the outer limits of the bounds of the law, ever searching for a more efficacious remedy, or a more successful defense.

8. NEGLIGENCE — DUTY — THIRD PARTIES — RELIANCE.

Reliance is an appropriate fact to be considered in deciding whether a professional person owes a duty to a third party to avoid negligence in performing professional services.

9. ATTORNEY AND CLIENT — NEGLIGENCE — DUTY — THIRD PARTIES — RELIANCE.

There can be neither reliance by a party in litigation on the quality of services performed by an attorney who represents that party's adversary, nor benefit intended by the attorney or the adversary to that party, because the relation of the parties is adversarial; the absence of reliance distinguishes the case from those in which professional persons have been held liable for negligence in performing professional services which affect third parties.

10. PROCESS — ABUSE OF PROCESS — TORTS.

To recover for the tort of abuse of process the plaintiff must plead and prove, in addition to damages, that the defendant had an ulterior purpose and that there was an act in the use of process which is improper in the regular prosecution of the proceeding.

11. PROCESS — ABUSE OF PROCESS — PLEADING.

The action for abuse of process lies for the improper use of process, not for maliciously causing it to issue; a plaintiff physician did not properly plead an action for abuse of process against defendant attorneys who brought a malpractice action against him where the only act the plaintiff alleged that the attorneys committed was the issuance of a summons and complaint, which are properly used for the institution of a civil suit for medical malpractice.

12. MALICIOUS PROSECUTION — SPECIAL INJURY.

Special injury, an interference with the plaintiff's person or property, is an essential element of the tort action for malicious prosecution of civil proceedings.

13. MALICIOUS PROSECUTION — SPECIAL INJURY.

Special injury should be retained as an element of the tort of malicious prosecution of civil proceedings to limit the circumstances in which an action for the tort can be maintained; the limitation serves the dual purpose of allowing the honest plaintiff to press his case without threat of suit and of limiting vexatious lawsuits.

14. MALICIOUS PROSECUTION — ELEMENTS OF TORT.

The elements of a tort action for malicious prosecution of civil proceedings, in addition to special injury, are the termination of prior proceedings in favor of the present plaintiff, the absence of probable cause for bringing those proceedings, and malice, or a purpose other than that of securing the proper adjudication of the claim.

15. MALICIOUS PROSECUTION — PROBABLE CAUSE — EVIDENCE.

The absence of probable cause in bringing a civil action may not be established merely by showing that the action was successfully defended; to require an attorney to advance only those claims that will ultimately be successful would place an intolerable burden on the right of access to the courts.

16. MALICIOUS PROSECUTION — PROBABLE CAUSE.

One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information.

17. ATTORNEY AND CLIENT — MALICIOUS PROSECUTION — PROBABLE CAUSE.

Lack of probable cause on the part of a lawyer in initiating, defending, or continuing proceedings on behalf of a client may be found where the lawyer proceeded with knowledge that the claim had no factual or legal basis, but there is no obligation to investigate if the lawyer could reasonably believe the facts to be as the client alleges.

18. ATTORNEY AND CLIENT — PROFESSIONAL MISCONDUCT — ZEALOUS
    REPRESENTATION.

    Whether a lawyer abused his duty to represent his client's
    interests zealously is not a matter of what a hypothetical
    reasonable practitioner would have done in the same circum-
    stances, but of whether the lawyer's conduct was beyond the
    limits of reason or the bounds of the law, although another
    reasonable lawyer might not have acted similarly.

19. ATTORNEY AND CLIENT — MALICIOUS PROSECUTION — MALICE —
    PROBABLE CAUSE.

    The rule in actions for malicious prosecution of civil proceedings
    initiated by a layperson that malice may be inferred from the
    facts that establish want of probable cause, although the jury is
    not required to draw that inference, fails to make sufficient
    allowance for the lawyer's role as advocate and should not be
    applied in determining whether a lawyer acted for an improper
    purpose.

20. ATTORNEY AND CLIENT — MALICIOUS PROSECUTION — MALICE —
    PROBABLE CAUSE.

    A finding, in an action for malicious prosecution of civil proceed-
    ings, of an improper purpose on the part of the unsuccessful
    attorney must be supported by evidence independent of the
    evidence establishing that the action was brought without
    probable cause.

CONCURRING OPINION BY LEVIN, J.

21. MALICIOUS PROSECUTION — COSTS — COURT RULES.

    *A court rule should be adopted to allow the trial judge to order
    the payment of the prevailing party's actual expenses, includ-
    ing reasonable attorneys' fees and limited consequential dam-
    ages, where an action was wrongfully initiated, defended, or
    continued; that remedy would provide an appropriate measure
    of deterrence against wrongful litigation and reasonable com-
    pensation for wronged litigants without imperiling the right of
    free access to the courts.*

OPINION DISSENTING IN PART BY COLEMAN, C.J.

See headnotes 1-11.

22. MALICIOUS PROSECUTION — SPECIAL INJURY.

    *Proof of special injury should not be required in actions for the
    malicious prosecution of civil proceedings because the other
    elements of the action, such as a lack of probable cause and an*

*improper motive, provide the necessary protection for bona fide litigants.*

23. MALICIOUS PROSECUTION — ATTORNEY AND CLIENT — PROFESSIONAL MISCONDUCT.

*A viable action for malicious prosecution is necessary to give substance to the attorney's duty not to bring frivolous litigation (DR 7-102[A]).*

24. MALICIOUS PROSECUTION — PUBLIC POLICY.

*The Supreme Court should preserve free access to the courts for meritorious claims, rather than deny it for persons who have suffered harm, but not special injury, from wrongful litigation by continuing the requirement of special injury in an action for malicious prosecution.*

OPINION DISSENTING IN PART BY BLAIR MOODY, JR., J.

See headnotes 1-11, 16, 17.

25. COMMON LAW — SUPREME COURT — CONSTITUTIONAL LAW.

*The duty to interpret the common law in light of present circumstances rests with the Supreme Court (Const 1963, art 3, § 7).*

26. MALICIOUS PROSECUTION — SPECIAL INJURY.

*The requirement of special injury limits the potential recovery for malicious prosecution of civil proceedings and thereby protects the right of free access to the courts; however, the limitation is too broad because suits arising out of meritorious as well as vexatious actions are disallowed.*

27. MALICIOUS PROSECUTION — IMPROPER PURPOSE.

*The strict requirements of lack of probable cause and malice, i.e., improper purpose, are more appropriate guardians of free access to the courts and of promoting the honest use of the judicial process than the artificial requirement of special injury.*

28. ATTORNEY AND CLIENT — MALICIOUS PROSECUTION — ELEMENTS OF TORT.

*The delicate relation among attorneys, clients, and the judicial system requires a careful definition of the elements of probable cause and improper purpose when attorneys are sued for malicious prosecution of civil proceedings.*

29. ATTORNEY AND CLIENT — MALICIOUS PROSECUTION — PROBABLE CAUSE.

*An attorney, in complying with the duties to make legal counsel*

available and to represent a client zealously within the bounds of the law, should be prepared to represent clients with doubtful, but tenable claims; the threat of liability for wrongful use of civil proceedings must not force an attorney to choose between advancing substantial costs to investigate a claim with some merit and refusing to take it.

30. ATTORNEY AND CLIENT — MALICIOUS PROSECUTION — PROBABLE CAUSE.

A lawyer is not liable for malicious prosecution of civil proceedings if he acts primarily for the purpose of obtaining a proper adjudication of the claim.

31. MALICIOUS PROSECUTION — SPECIAL INJURY.

The requirement of special injury should be eliminated from actions for malicious prosecution of civil proceedings; the requirements of lack of probable cause and improper purpose, and functions of the judge and jury, strike a proper balance between unfettered access to the courts for those with tenable claims and the need to redress the harm caused by an abuse of the judicial system.

*Schureman, Frakes, Glass & Wulfmeier* (by *Charles F. Glass)* and *Nederlander, Dodge & McCauley, P.C.* (by *Patrick B. McCauley),* for plaintiff.

*Lopatin, Miller, Bindes, Freedman & Bluestone* (by *Sheldon L. Miller* and *Michael Gagleard)* for defendant Dozorc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Charles T. McGorisk* and *Christine D. Oldani),* for defendant Golden.

Amici Curiae:

*Bodman, Longley & Dahling* (by *Joseph A. Sullivan* and *David W. Hipp)* for Detroit Surgical Society.

*John M. Burkoff* for Michigan Association of Neurological Surgeons, Michigan Orthopedic Society, Michigan Academy of Plastic Surgeons, Michi-

gan Society of Urologists, and Michigan Chapter, American College of Surgeons.

*Kerr, Russell & Weber* (by *A. Stewart Kerr, John L. Shoemaker* and *Curtis J. DeRoo)* for Michigan State Medical Society and Wayne County Medical Society.

*Ivan E. Barris* and *David F. DuMouchel* for State Bar of Michigan.

*Hillman, Baxter & Hammond* (by *Joel M. Boyden)* and *Bushnell, Gage & Reizen, in propriis personis.*

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Daniel G. Wyllie* and *Bowden V. Brown)* for Herbert D. Schunk, M.D.

LEVIN, J. The plaintiff is a physician who, after successfully defending in a medical malpractice action, brought this action against the attorneys who had represented the plaintiffs in the former action. Dr. Friedman sought under a number of theories to recover damages for being compelled to defend against an allegedly groundless medical malpractice action. The trial court granted the defendants' motions for summary and accelerated judgment.

The Court of Appeals affirmed in part and reversed in part. We granted leave to appeal to consider what remedies may be available to a physician who brings such a "countersuit".

We hold that:

(1) The plaintiff has failed to state an actionable claim on a theory of negligence because an attorney owes no duty of care to an adverse party in litigation;

(2) The plaintiff has failed to state an actionable claim on a theory of abuse of process because there is no allegation that defendants committed an irregular act in the use of the process issued in the prior case;

(3) The plaintiff has failed to state an actionable claim on a theory of malicious prosecution because his complaint did not allege interference with his person or property sufficient to constitute special injury under Michigan law.

We affirm the decision of the Court of Appeals dismissing plaintiff's negligence and abuse of process claims, and reverse its decision to remand plaintiff's malicious prosecution claim to the trial court for further proceedings.

I

Leona Serafin entered Outer Drive Hospital in May, 1970, for treatment of gynecological problems. A dilatation and curettage was performed by her physician, Dr. Harold Krevsky. While in the hospital, Mrs. Serafin was referred to the present plaintiff, Dr. Friedman, for urological consultation. Dr. Friedman recommended surgical removal of a kidney stone which was too large to pass, and the operation was performed on May 20, 1970. During the surgery, the patient began to ooze blood uncontrollably. Although other physicians were consulted, Mrs. Serafin's condition continued to worsen and she died five days after the surgery. An autopsy was performed the next day; the report identified the cause of death as, thrombotic thrombocytopenic purpura, a rare and uniformly fatal blood disease, the cause and cure of which are unknown.

On January 11, 1972, attorneys Dozorc and

Golden, the defendants in this action, filed a malpractice action on behalf of Anthony Serafin, Jr., for himself and as administrator of the estate of Leona Serafin, against Peoples Community Hospital Authority, Outer Drive Hospital, Dr. Krevsky and Dr. Friedman, as well as another physician who was dismissed as a defendant before trial. In December, 1974, the case went to trial in Wayne Circuit Court. No expert testimony tending to show that any of the defendants had breached accepted professional standards in making the decision to perform the elective surgery or in the manner of its performance was presented as part of the plaintiff's case. The judge entered a directed verdict of no cause of action in favor of Dr. Friedman and the other defendants at the close of the plaintiff's proofs. The judge subsequently denied a motion for costs brought by codefendant Peoples Community Hospital Authority, pursuant to GCR 1963, 111.6. The Court of Appeals affirmed[1] and this Court denied leave to appeal.[2]

Dr. Friedman commenced the present action on March 17, 1976 in Oakland Circuit Court. The following excerpt from his complaint summarizes his theories of recovery and the injuries he allegedly sustained as a result of the initiation and prosecution of the malpractice action:

"13. That as a direct and proximate result of the negligence, malicious prosecution and abuse of process of these defendants, the plaintiff, Seymour Friedman, M.D., has endured grievous damages, including, but not limited to, the following: the cost of defending the aforesaid cause and the appeal, an increase in his annual malpractice insurance premiums for so long as

[1] *Serafin v Peoples Community Hospital Authority,* 67 Mich App 560; 242 NW2d 438 (1976).

[2] 397 Mich 880 (1976).

he practices medicine, the loss of two young associates from his office who could no longer afford to pay the increased malpractice insurance premiums thereby requiring him to work excessive hours without relief, damages to his reputation as a physician and surgeon, embarrassment and continued mental anguish."

The defendants moved for summary judgment under GCR 1963, 117.2, subds (1) and (3), and for accelerated judgment under GCR 1963, 116. The judge granted both motions in November, 1976, concluding that (1) plaintiff had failed to state a cause of action for negligence because there was "no relationship other than that of adversaries" between the defendants and plaintiff and hence there was "no duty owing"; and (2) the refusal of the trial judge in the prior action to find that the claims advanced by the defendants on behalf of their client were unreasonable and should render them responsible under GCR 1963, 111.6 for litigation expenses of their opponents established that the prior action was brought with probable cause and therefore precluded a subsequent action for malicious prosecution or abuse of process.

The Court of Appeals affirmed the dismissal insofar as it was based on failure to state a claim on the theories of negligence and abuse of process.[3] However, it reversed the dismissal of the cause of action sounding in malicious prosecution and remanded this cause to the trial court, declaring that an adverse ruling on a defendant's motion under GCR 111.6 did not bar a subsequent malicious prosecution action and that the facts surrounding the filing and continuation of the prior action were in dispute.

This Court granted leave to appeal on both the plaintiff's application from that portion of the

[3] *Friedman v Dozorc*, 83 Mich App 429; 268 NW2d 673 (1978).

Court of Appeals decision affirming the dismissal
of the causes of action sounding in negligence and
abuse of process and on the defendants' applica-
tion to cross-appeal from that portion of the deci-
sion reversing the dismissal of the cause of action
for malicious prosecution.[4]

## II

### A

Plaintiff and amici in support urge this Court to
hold that an attorney owes a present or prospec-
tive adverse party a duty of care, breach of which
will give rise to a cause of action for negligence.
We agree with the circuit judge and the Court of
Appeals that an attorney owes no actionable duty
to an adverse party.

Plaintiff and amici argue that an attorney who
initiates a civil action owes a duty to his client's
adversary and all other foreseeable third parties
who may be affected by such an action to conduct
a reasonable investigation and re-examination of
the facts and law so that the attorney will have an
adequate basis for a good-faith belief that the
client has a tenable claim.[5] Plaintiff contends that

---

[4] 405 Mich 823 (1979).

[5] The heading of the principal section of plaintiff's argument seek-
ing recognition of a cause of action for negligence against an opposing
attorney is more specific:

"An attorney who commences a civil action has the affirmative
duty and obligation to foreseeable third parties who may be affected
by that civil action to conduct a reasonable investigation prior to the
commencement of the action and to constantly re-examine the civil
action once filed during its continuation as is reasonably necessary,
ordinary and appropriate under the circumstances of the particular
case to enable him to come to a good faith belief that his client has or
continues to have a tenable claim and that the factual matters
contained in the complaint are true and such investigation and re-
examination must be conducted with the exercise of reasonable and
ordinary skill, care, diligence and knowledge ordinarily possessed by
attorneys under similar circumstances."

this duty is created by the Code of Professional Responsibility and by the Michigan General Court Rules.[6]

Plaintiff further argues that an attorney's separate duty under the Code of Professional Responsibility to zealously represent a client is limited by the requirement that the attorney perform within the bounds of the law.[7] Acting within the bounds of the law is said to encompass refraining from asserting frivolous claims; this charge upon the profession imposes upon counsel a duty to the public, the courts and the adverse party to conduct a reasonable investigation. Plaintiff contends that since the duty to investigate already arises from

[6] Plaintiff's brief refers to Code of Professional Responsibility and Canons, Canon 1, DR 1-102(A), Canon 6, DR 6-101(A), Canon 7, DR 7-102(A), and various Ethical Considerations associated with Canon 7, especially EC 7-4 and EC 7-10, as well as to GCR 1963, 111.6 and 114.

[7] Code of Professional Responsibility and Canons, Canon 7 provides: "A lawyer should represent a client zealously within the bounds of the law".

DR 7-102 provides in pertinent part:

"(A) In his representation of a client, a lawyer shall not:

"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

"(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law."

EC 7-4 provides:

"The advocate may urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail. His conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification, or reversal of the law. However, a lawyer is not justified in asserting a position in litigation that is frivolous."

EC 7-10 provides:

"The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm."

the attorney-client relationship under the code and court rules, recognition of a cause of action for negligence will impose no new obligation on the attorney.

Defendants counter that an attorney cannot be liable to third parties for acts that result from client representation in the absence of fraud or collusion. An attorney's only actionable legal duty is owed to his or her client. An attorney cannot owe a duty to the client's legal opponent because of the very duty that is owed to the client. An attorney owing one duty to a client and another duty to the client's adversary, each of whom have adverse interests, would be faced with an irreconcilable conflict of interest.

B

In a negligence action the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides after assessing the competing policy considerations for and against recognizing the asserted duty.[8]

Dean Prosser has said that " 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff" and concerns "the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other".[9] Only if the law recognizes a duty to act with due care arising from the relationship of the parties does it subject the defendant to liability for negligent conduct.

Assuming that an attorney has an obligation to

[8] *Moning v Alfono,* 400 Mich 425, 436-438; 254 NW2d 759 (1977); *Smith v Allendale Mutual Ins Co,* 410 Mich 685, 713; 303 NW2d 702 (1981).

[9] Prosser, Torts (4th ed), § 53, p 324. Dean Prosser also cautions that " '[d]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection". *Id:,* pp 325-326.

his client to conduct a reasonable investigation prior to bringing an action, that obligation is not the functional equivalent of a duty of care owed to the client's adversary. We decline to so transform the attorney's obligation because we view such a duty as inconsistent with basic precepts of the adversary system.

The duties, professional and actionable, owed to the client by the attorney acting as advocate and adviser are broader than the obligation of reasonable investigation. Those duties concern decisions which the attorney makes on behalf of, and often in consultation with, the client, regarding the manner of proceeding with the client's cause. A decision to proceed with a future course of action that involves litigation will necessarily adversely affect a legal opponent. If an attorney were held to owe a duty of due care to both the client and the client's adversary, the obligation owing to the adversary would extend beyond undertaking an investigation and would permeate all facets of the litigation. The attorney's decision-making and future conduct on behalf of both parties would be shaped by the attorney's obligation to exercise due care as to both parties. Under such a rule an attorney is likely to be faced with a situation in which it would be in the client's best interest to proceed in one fashion and in the adversary's best interest to proceed contrariwise. However he chooses to proceed, the attorney could be accused of failing to exercise due care for the benefit of one of the parties.

In *Parnell v Smart,* 66 Cal App 3d 833, 837-838; 136 Cal Rptr 246, 248 (1977), a panel of the California Court of Appeals, in refusing to recognize an attorney's duty to his client's adversary, expressed this concern as follows:

"The distinguishing feature of this case is that the defendants occupy the position of counselor to the *adverse* party (Farmers) in an *adverse* proceeding instituted by the plaintiff. Defendants were directly responsible to their client, Farmers, and were under a duty to represent and protect their client's interest against the claim being made by plaintiff. In this role they were duty bound to challenge, minimize or, if possible, to defeat the claim being made. Under these circumstances, it is unreasonable to conceive that defendants owed some sort of legal duty to plaintiff." (Emphasis in original.)

In short, creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest[10] which would seriously hamper an attorney's effectiveness as counsel for his client.[11] Not only would the adversary's

---

[10] Under a section entitled Conflicts in Litigation, the comments to the Discussion Draft of ABA Model Rules of Professional Conduct, 48 USLW, No. 32, Supplement, p 8 (February 19, 1980), most aptly identify the type of conflict of interest presented under the instant facts:

"Most if not all questions of conflict of interest are questions of degree. As noted above, minor and inevitable conflicts inherent in client-lawyer relationships necessarily must be tolerated. On the other hand, a conflict of interest may be so sharp as to preclude the lawyer from representing a particular client. For example, under no circumstances could a lawyer properly represent both the plaintiff and the defendant in contested litigation, or represent parties to a negotiation whose interests are fundamentally antagonistic to each other. When it is plain that prejudice to the client's interests is likely to result, the lawyer should not undertake the representation even with the consent of the client. A client's consent does not legitimate a lawyer's abuse of professional office."

[11] In *Berlin v Nathan,* 64 Ill App 3d 940, 952; 381 NE2d 1367, 1376 (1978), which arose from a physician's countersuit against the original plaintiffs and their attorneys, the court said:

"[W]e believe it would be contrary to public policy for us to hold that an attorney has a duty to an intended defendant not to file a weak or perhaps 'frivolous' lawsuit since we would be creating an insurmountable conflict of interest between the attorney and the client. The attorney owes a duty to his or her client to present the client's case vigorously in a manner as favorable to the client as the rules of law and professional ethics demand. *(Norton v Hines,* 49 Cal App 3d 917; 123 Cal Rptr 237 [1975])."

interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship. As the California Supreme Court observed in *Goodman v Kennedy,* 18 Cal 3d 335, 344; 556 P2d 737, 743; 134 Cal Rptr 375 (1976):

"The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests' *(Anderson v Eaton,* 211 Cal 113, 116; 293 P 788, 790 [1930]). The result would be both 'an undue burden on the profession' *(Lucas v Hamm,* 56 Cal 2d 583, 589 [15 Cal Rptr 821, 824; 364 P2d 685, 688 (1961)]) and a diminution in the quality of the legal services received by the client." (Footnote omitted.)

In *Tappen v Ager,* 599 F2d 376, 379 (CA 10, 1979), a physician's countersuit against an attorney, the United States Court of Appeals for the Tenth Circuit refused to find a duty owing to the attorney's opponent in litigation because such a duty would be inconsistent with the adversarial relationship of the parties:

"[T]he negligent tort arises in a narrow context. It requires two people to be in a relationship whereby one person owed a duty of prudent conduct to the other. The adversary nature of the lawsuit is strongly at odds with this concept. The lawyer's duty of care is to his client and to the court."

We agree and conclude that the public policy of maintaining a vigorous adversary system outweighs the asserted advantages of finding a duty of due care to an attorney's legal opponent.

Recognition of an attorney's duty to an adverse party would, contrary to the assertions of plaintiff and amici, impose additional burdens on the attorney. The conflict of interest which would result cannot be resolved, as plaintiff contends, simply by allowing the attorney to resolve all doubts in favor of the client, for the existence or reasonableness of the doubts might themselves become jury questions which would defy principled resolution.

Plaintiff argues that concern for the chilling effect on free access to the courts which might result from declaring the existence of an attorney's duty in favor of an adverse party is misplaced. Instead, plaintiff urges that recognition of a cause of action in negligence would facilitate free access to the courts. Plaintiff asserts that the historical check on free access to the courts through independent assessment of the case by the attorney has broken down. Instead of acting as an effective screen against groundless suits, the attorney has become a mere conduit for such suits, particularly in medical malpractice actions where the attorney acquires a contingent fee interest in the outcome of the litigation. Recognition of a cause of action for negligence in such cases would, we are told, encourage attorneys to resume this screening function and thereby promote free access to the courts for those with well-founded claims.

Defendants counter that recognition of a duty owing from an attorney to his client's adversary would inhibit free access to the courts. An attorney faced with the risk of being held liable in negligence to the adverse party will decline close cases and will be unduly inhibited in the free use of the courts on behalf of his client.

We acknowledge that our ability to predict the

effect on court dockets of recognition of a cause of action for negligence is limited. There is, however, a public policy of encouraging free access to the courts. Because we are of the opinion that recognition of a cause of action for negligence in favor of a client's adversary might unduly inhibit attorneys from bringing close cases or advancing innovative theories, or taking action against defendants who can be expected to retaliate, we decline to recognize a duty of due care to the adverse party. We reiterate what this Court said in *State Bar Grievance Administrator v Corace*, 390 Mich 419, 434-435; 213 NW2d 124 (1973):

"[O]ur adversary system 'intends, and expects, lawyers to probe the outer limits of the bounds of the law, ever searching for a more efficacious remedy, or a more successful defense'."

We agree with those courts in other jurisdictions which have relied on the policy of encouraging free access to the courts as a reason for declining to recognize a negligence cause of action in physician countersuits.[12] No appellate court has yet approved such a cause of action.

We briefly address, for the sake of completeness, the other arguments advanced by plaintiff and amici.

Plaintiff and amici contend that a greater degree of accountability should be imposed upon the legal profession to restore public confidence in the bar, and that privity of contract no longer shields a professional from liability to foreseeable third par-

[12] *Weaver v Superior Court of Orange County*, 95 Cal App 3d 166; 156 Cal Rptr 745 (1979); *Berlin v Nathan*, 64 Ill App 3d 940; 381 NE2d 1367 (1978); *Lyddon v Shaw*, 56 Ill App 3d 815; 372 NE2d 685 (1978); *Brody v Ruby*, 267 NW2d 902 (Iowa, 1978); *Spencer v Burglass*, 337 So 2d 596 (La App, 1976); *Hill v Willmott*, 561 SW2d 331 (Ky App, 1978).

ties.[13] Our decision today is not, however, based on the doctrine of privity of contract but on public policy considerations respecting the attorney's role in the adversary system and the importance of preserving free access to the courts.

Plaintiff and amici also contend that attorneys ought to be subject to liability for negligence to all foreseeable third parties, because the scope of duty is determined by foreseeability of harm, which is clear in the case of an intended adversary, and not by such factors as reliance or intended benefit.

We are of the opinion, however, that reliance is an appropriate factor to be considered in deciding whether a duty is owed to another by a professional.[14] The absence of reliance distinguishes a third party's relationship with a member of the legal profession who represents that party's adversary from a third party's relationship with a member of another profession whose negligent conduct may affect him.[15]

[13] In *Williams v Polgar*, 391 Mich 6; 215 NW2d 149 (1974), this Court held that an abstracter of title is subject to liability in negligence to foreseeable third parties who rely on the abstract.

[14] In finding that a title abstracter may owe a duty to a third party to avoid negligent misrepresentation in an abstract, this Court recognized a duty to persons who had foreseeably *relied* on the abstract:

"This cause of action arising from breach of the abstracter's contractual duty runs to those persons an abstracter could reasonably foresee as relying on the accuracy of the abstract put into motion. The particular expert-client relationship accruing to a professional contract to certify the condition of the record of title reposes a peculiar trust in an abstracter which runs not only to the original contracting party." *Williams v Polgar, supra,* 22-23.

[15] See *Bickel v Mackie,* 447 F Supp 1376, 1381 (ND Iowa, 1978), *aff'd* 590 F2d 341 (CA 8, 1978), where the Court declined to find that an attorney owed a duty of due care to a physician who successfully defended a malpractice suit, and said:

"However, in the present case there is no question of reliance of third parties who are adversaries in judicial proceedings. The attorney owes his primary and paramount duty to his client. The very nature of the adversary process precludes reliance by opposing parties. While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into

An occasional decision has found an attorney liable to third parties absent reliance. The California Supreme Court held an attorney liable to the intended beneficiary under a will for negligently drafting the will.[16]

Defendants contend that an attorney's liability for negligence to third parties should be limited to negligent will drafting and negligent title examination. We intimate no view regarding an attorney's liability for negligence to third parties who are not adversaries in litigation. Those factual situations are not before us. It is sufficient to note that in the present case there can be neither reliance by the plaintiff nor benefit intended by the defendants or their client because the relationship of the parties is adversarial.[17]

---

liability for negligence to an opposing party where there is no foreseeable reliance by that party on the attorney's conduct."

[16] *Lucas v Hamm,* 56 Cal 2d 583; 364 P2d 685; 15 Cal Rptr 821 (1961).

The California courts have reasoned that where an attorney's relationship with his client was intended to benefit a third party, the third party could recover directly from the attorney for breach of duty where the harm from the breach was also certain and foreseeable. *Heyer v Flaig,* 70 Cal 2d 223; 449 P2d 161; 74 Cal Rptr 225 (1969).

Although the California courts have been liberal in extending an attorney's liability to third parties, the California Supreme Court more recently refused to extend an attorney's duty of care in giving legal advice to a client to third parties with whom the client deals at arm's length in the absence of a showing that the advice was foreseeably transmitted to or relied upon by or intended to benefit the third parties. *Goodman v Kennedy, supra.*

In *Norton v Hines,* 49 Cal App 3d 917; 123 Cal Rptr 237 (1975), and *Weaver v Superior Court of Orange County,* 95 Cal App 3d 166; 156 Cal Rptr 745 (1979), a panel of the California Court of Appeals declined to find that an attorney owed a duty to his or her client's adversary in litigation.

[17] The Appellate Court of Illinois observed:

"When a tort action is brought [the attorney] has but one intended beneficiary, his client; the adverse party is certainly not an intended beneficiary of the adverse counsel's client. Thus, even in states extending the attorney's responsibility and liability to intended beneficiaries of the client's conduct, such as intended legatees under a will, no liability to the adverse party sued by the client has been found

In sum, the demands of the adversary system distinguish the legal profession from other professions whose members have been held liable to third parties for negligence, and the present case from those in which lawyers have been held liable to third parties.

## III

To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Spear v Pendill,* 164 Mich 620, 623; 130 NW 343 (1911).[18]

Plaintiff contends he has pleaded that defendants' ulterior purpose in filing the former malpractice action was to coerce payments of large sums of money from plaintiff for defendants' financial gain by means of their contingent fee arrangement with the former plaintiff. In addition, plaintiff alleges that irregular use of process was shown by defendants' filing of the complaint without adequate investigation.

Defendants counter that plaintiff's pleadings are

absent malicious prosecution." *Berlin v Nathan,* 64 Ill App 3d 940, 952-953; 381 NE2d 1367, 1376 (1978).

[18] The Restatement Torts, 2d, explains the tort of abuse of process as follows:

"The gravamen of the misconduct for which the liability stated in this section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this section." 3 Restatement Torts, 2d, § 682, comment *a,* p 474.

deficient in failing to allege an act by the defendants beyond mere initiation of a lawsuit and an ulterior purpose other than settlement of a lawsuit.

We need not decide whether plaintiff's pleadings sufficiently allege that the defendants had an ulterior purpose in causing process to issue, since it is clear that the plaintiff has failed to allege that defendants committed some irregular act in the use of process. The only act in the use of process that plaintiff alleges is the issuance of a summons and complaint in the former malpractice action. However, a summons and complaint are properly employed when used to institute a civil action, and thus plaintiff has failed to satisfy the second element required in *Spear, supra,* 623, where the Court observed " '[t]his action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue' ".

We note that other courts that have addressed the question whether abuse of process is a possible theory of recovery in the context of a medical malpractice countersuit have found that mere commencement of an action for malpractice is not an improper use of process. *Martin v Trevino,* 578 SW2d 763 (Tex Civ App, 1978); *Hoppenstein v Zemek,* 62 AD2d 979; 403 NYS2d 542 (1978); *Lyddon v Shaw,* 56 Ill App 3d 815; 372 NE2d 685 (1978).

IV

Plaintiff relies upon the same allegations respecting defendants' conduct and their failure to meet professional standards which assertedly constitute negligence in contending that he has pled a cause of action for malicious prosecution. He ar-

gues that the question of probable cause in a malicious prosecution action against the attorney for an opposing party turns on whether the attorney fulfilled his duty to reasonably investigate the facts and law before initiating and continuing a lawsuit. If the attorney's investigation discloses that the claim is not tenable, then it is his obligation to discontinue the action.

Defendants respond that Michigan is among those jurisdictions that have not abandoned the special injury requirement in actions for the malicious prosecution of civil proceedings. They urge, in addition, that this Court adopt a rule that a successful motion pursuant to GCR 1963, 111.6 in the former lawsuit is a necessary condition precedent to institution of a subsequent malicious prosecution action by the former defendant.

We agree with defendants that under Michigan law special injury remains an essential element of the tort cause of action for malicious prosecution of civil proceedings. Although the circuit judge did not rest decision on the plaintiff's failure to plead special injury, summary judgment under GCR 1963, 117.2(1) for failure to state a claim could be appropriately entered on that basis; the factual disputes asserted by plaintiff are immaterial.[19]

## A

The recognition of an action for malicious prosecution developed as an adjunct to the English practice of awarding costs to the prevailing party[20]

---

[19] Plaintiff contends that it was error for the trial court to grant defendants' motions for summary and accelerated judgment since the facts relevant to whether defendants had probable cause to initiate and continue the former malpractice action—the extent to which the defendants conducted a reasonable review of medical records and pathology and autopsy reports, and the extent to which they attempted to obtain the opinions of expert witnesses—were in dispute.

[20] The early common law required any complainant who lost his suit to pay his opponent *wer,* a monetary penalty which varied with

in certain aggravated cases where the costs rem-
edy was thought to be inadequate and the defen-
dant had suffered damages beyond the expense
and travail normally incident to defending a law-
suit. In 1698 three categories of damage which
would support an action for malicious prosecution
were identified: injury to one's fame (as by a
scandalous allegation), injury to one's person or
liberty, and injury to one's property.[21] To this day
the English courts do not recognize actions for
malicious prosecution of either criminal or civil

---

the complainant's status. After the Norman conquest, *wer* gave way
to amercement, a more flexible sanction paid to the court. Although
every unsuccessful initiator of legal proceedings was subject to
amercement, the amount, at least in theory, varied according to the
wrongfulness of the complainant's conduct. Note, *Groundless Litiga-
tion and the Malicious Prosecution Debate: A Historical Analysis,* 88
Yale L J 1218, 1221-1223 (1979).

Amercement lost its effectiveness over time as the amounts assessed
were subjected to limits and diminished by inflation. *Id.,* 1226, fn 63.
Parliament eventually sought to revive a system of internal sanctions
through a number of statutes which allowed prevailing defendants—
and plaintiffs (see Goodhart, *Costs,* 38 Yale L J 849, 852-853 [1929])—
to recover all or part of their costs of litigation. *Id.,* p 853, and Note,
*supra,* p 1226, fn 64, both citing 23 Hen 8, c 15, § 1 (1531) (allowing
costs at the discretion of the court to a prevailing defendant in
actions of trespass, case, debt or covenant, detinue, account, and
contract, or on any statute); 8 Eliz 1, c 2 (1565) (allowing costs and
damages to the defendant where the plaintiff had caused arrest or
attachment by invoking summary process and had delayed or discon-
tinued prosecution of the claim on the merits); and 4 Jac 1, c 3 (1607)
(allowing the defendant to recover costs whenever the plaintiff might
have recovered them had he prevailed).

The Statute of Marlbridge (also Marleberge, Marlborough), 52 Hen
3, c 6 (1267), has been described as a watershed which signaled the
replacement of a previously recognized right to bring a subsequent
action for false suit with a sweeping system for allowing prevailing
defendants in civil cases to recover costs, including attorney fees, in
the original action. See, *e.g.,* 52 Am Jur 2d, Malicious Prosecution,
§ 9, pp 191-192. But other sources state that the asserted pre-statute
right of action is "mythical", Note, *supra,* p 1225, fn 59, and that the
statute "was an isolated instance" of the unsuccessful plaintiff being
subject to liability to the defendant as well as amercement. Goodhart,
*supra,* p 853.

[21] *Savile v Roberts,* 1 Ld Raym 374, 378; 91 Eng Rep 1147, 1149-
1150 (1698).

proceedings unless one of these types of injury, as narrowly defined by the cases, is present.[22]

A substantial number of American jurisdictions today follow some form of "English rule" to the effect that "in the absence of an arrest, seizure, or special damage, the successful civil defendant has no remedy, despite the fact that his antagonist proceeded against him maliciously and without probable cause".[23] A larger number of jurisdictions, some say a majority, follow an "American rule" permitting actions for malicious prosecution of civil proceedings without requiring the plaintiff to show special injury.[24]

## B

The plaintiff's complaint does not allege special injury. We are satisfied that Michigan has not significantly departed from the English rule and we decline to do so today.

This Court heretofore has neither recognized the unrestricted availability of a tort cause of action, analogous to malicious prosecution, for the wrongful initiation or continuation of civil proceedings, nor abrogated the traditional requirement that a

[22] For discussion of what will constitute the requisite injury, see *Quartz Hill Consolidated Gold Mining Co v Eyre,* LR 11 QBD 674, 689-693; 52 LJQB(NS) 488 (1883) (opinion of Bowen, L.J.); and *Wiffen v Bailey & Romford Urban Dist Council,* [1915] 1 KB 600.

[23] 52 Am Jur 2d, *supra,* § 10, p 192. The Reporter's Note at 5 Restatement Torts, 2d, Appendix, § 674, p 438, identifies 16 states which require some form of special injury in order to support an action for wrongful civil proceedings. *O'Toole v Franklin,* 279 Or 513, 518, fn 3; 569 P2d 561 (1977), lists the same 16 states and adds Kentucky.

[24] 52 Am Jur 2d, *supra,* § 10, p 193; Prosser, Torts (4th ed), § 120, p 853. The Reporter's Note, *supra,* lists 30 states which purportedly follow this majority rule. *O'Toole v Franklin, supra,* pp 518-519, fn 4, identifies 23 states.

Since the Reporter's Note and *O'Toole* differ over the categorization of Kentucky (see fn 23, *supra),* and both include Michigan (see part IVB of this opinion) as a "majority rule" state, the classification of the states does not appear to be entirely reliable.

plaintiff alleging wrongful institution of civil pro-
ceedings have suffered special injury in the nature
of an interference with person or property. Exami-
nation of the Court's decisions reveals, rather, that
despite occasional dictum the existence of an ac-
tion for malicious prosecution of civil proceedings
has been recognized only in circumstances where,
consistent with the English rule, an interference
with the plaintiff's person or property occurred.

*Brand v Hinchman,* 68 Mich 590; 36 NW 664
(1888), is the first decision of this Court concerning
an action for malicious prosecution of a civil,
rather than criminal, proceeding. Hinchman had
obtained a writ of attachment against Brand and
his business partner McCullough based upon an
affidavit alleging that Brand and McCullough were
indebted to Hinchman and were about to assign,
dispose of, or conceal their property with intent to
defraud their creditors. Two deputies took the writ
to Brand's store and displayed it to him. Brand
asked and was granted time to see Hinchman or
Hinchman's attorneys. The officers remained at
the store for at least half an hour until a clerk
employed by Hinchman's attorneys arrived to tell
them the claim was settled. The officers departed
without having formally served the writ or levied
upon property of the business.

When Brand and McCullough subsequently ob-
tained a judgment against Hinchman for mali-
ciously obtaining the writ of attachment, Hinch-
man contended that the action for malicious prose-
cution would not lie because there had been no
arrest of the plaintiffs' persons or seizure of their
property. The Court responded:

"While in this case there was no service of the writ,
there was at least a technical taking and possession of
the property. The officer went in the store to make the

levy, and did not go out of it until ordered to by the agent of Hinchman & Sons. He testifies that he should have prevented any one from removing any goods from the building, and he certainly had possession enough to have done so."[25]

The Court's finding that there had been a technical taking and possession of the plaintiffs' property was sufficient to answer Hinchman's argument and decide the case. Justice Morse, the author of the opinion, went on, however, to say:

"But, whether he had such possession or not, *I am* fully satisfied, from a consultation of the authorities, that the action is maintainable without any arrest or seizure of property."[26] (Emphasis supplied.)

Reviewing a number of sources, he acknowledged that the English authorities and the majority of treatise writers substantiated the rule on which Hinchman relied but identified a growing trend among the American cases toward allowing actions for malicious prosecution of a civil action absent an arrest or seizure of property, "especially the swearing out of a false attachment without probable cause".[27] Justice Morse concluded:

"The common law declares that for every injury there is a remedy. Especially is this so where the injury is malicious. If a man is injured in his credit and reputation, and his business lessened or broken up, it can make no difference, in his right to recover for such injury, that his person or property has not been manually seized or disturbed. *But this is my individual opinion, the other members of the Court not deeming it*

[25] *Brand v Hinchman,* 68 Mich 590, 596; 36 NW 664 (1888).
[26] *Id.*
[27] *Id.,* p 597.

*necessary in this case to express any opinion upon this matter.*"[28] (Emphasis supplied.)

*Brand* stands only for the proposition that the facts of that case demonstrated a technical or constructive seizure of property sufficient to support an action for maliciously obtaining an attachment; if a majority of the Court had been prepared to say that a seizure of property was not essential to the cause of action, it would have been unnecessary for the Court to address that point.

Nor is *Antcliff v June,* 81 Mich 477; 45 NW 1019 (1890), authority for recognizing an action for malicious prosecution of a civil proceeding absent special injury to the defendant in the prior action.[29] Justice MORSE, who also wrote this opinion, recalled and reiterated the views he had expressed

---

[28] *Id.,* pp 597-598.

[29] June, a laborer, consulted Crowell, an attorney, regarding a dubious claim of $50 that June purported to have against Antcliff, a prosperous farmer in a neighboring county. Crowell secured a summons against Antcliff from a justice of the peace and arranged to have it served by a deputy sheriff of the county where Antcliff resided, although the service was invalid because the summons was directed to officers of the county in which the justice sat. On the day set for return of the summons Antcliff, who in the meantime had received an anonymous letter advising him not to appear, was absent. The justice heard testimony from June, under questioning by Crowell, to the effect that Antcliff owed June $300 for goods and services; judgment was entered against Antcliff in that amount. Crowell subsequently obtained a writ of execution based upon the judgment and, accompanied by the sheriff of the county where Antcliff resided, rode out to Antcliff's farm to confront him with the execution. Antcliff denied any debt to June but, under threat by Crowell to drive off his stock and levy on his farm, paid $240 cash to settle the matter, most of which Crowell apparently pocketed.

Antcliff brought suit against June and Crowell upon a two-count declaration (see fn 31, *infra)* alleging that they had acted falsely, maliciously and without probable cause in obtaining the judgment, execution and payment. The circuit judge entered a directed verdict for the defendants at the close of Antcliff's proofs.

Antcliff appealed and the defendants responded that the declaration did not establish malicious prosecution because it showed that the court lacked jurisdiction and did not indicate that a prior proceeding had terminated in the plaintiff's favor.

in *Brand*[30] but again revealed his discussion to be dictum by concluding:

"But *it is not necessary to determine whether the first count was a good one, in an action for malicious prosecution.* It sets out fully a conspiracy between the defendants, June and Crowell, to defraud the plaintiff, and that he was defrauded out of the money paid upon this void judgment. It therefore clearly sets out an actionable wrong,—one that can be recovered for in an action upon the case,—and it is immaterial what it is called."[31] (Emphasis supplied.)

Thus, *Antcliff* stands not for the proposition that an action for malicious prosecution of civil proceedings will lie absent injury to the plaintiff's person or property but for the conclusion that the declaration stated an action on the case for fraud.

In the foregoing cases and others subsequently

[30] "I am satisfied, however, that if the wrong and injury is done by a malicious suit it is immaterial, upon principle, whether the court had jurisdiction or not to entertain such suit. For every malicious wrong there is certainly in this day and age a remedy; and, under our liberal system of pleading in this state, a plain and clear statement of the facts constituting the wrong is sufficient, and it is but little matter, in actions of trespass on the case, what the action is named or called.

"The first count of the declaration plainly shows a malicious and actionable wrong, and every averment was supported by cogent proof. It may be that the prosecution of the suit to judgment in the justice's court by itself alone did not touch the person or property of the plaintiff, but the writer of this opinion, in *Brand v Hinchman,* held that it was not necessary, in an action for the malicious prosecution of a civil suit, that the person should be molested or property seized, if it appeared that the suit was malicious, and without probable cause, and the party had been injured or damaged thereby. See 68 Mich 596-598, and cases there cited. I am still of the opinion there expressed, and have been fortified in my position by the facts of this case, and the decisions of other courts, not cited in *Brand v Hinchman* [citations omitted]." *Antcliff v June,* 81 Mich 477, 490; 45 NW 1019 (1890).

[31] *Id.,* p 492. The Court also found that the second count of the declaration stated a claim for abuse of process, and the case has been cited for that proposition. *Marlatte v Weickgenant,* 147 Mich 266, 275; 110 NW 1061 (1907); *Spear v Pendill,* 164 Mich 620, 624; 130 NW 343 (1911). See, also, *Powers v Houghton,* fn 32, *infra.*

decided by this Court,[32] the plaintiff suffered some

[32] In *Pawlowski v Jenks,* 115 Mich 275; 73 NW 238 (1897), the plaintiff brought an action alleging the malicious prosecution of an action in chancery to restrain him from operating a business selling intoxicating liquors. This Court held that the advice of counsel to a client who has fully disclosed the facts, to the effect that the client has a meritorious case, establishes as a matter of law the client's probable cause for bringing the action. Since no question concerning the sufficiency of the complaint was discussed and the defendant had obtained a permanent injunction in the prior action, the case is at most evidence that some members of the bar regarded an injunction which interfered with the plaintiff's business as a special injury which would support a subsequent action for malicious prosecution of civil proceedings.

In *Powers v Houghton,* 159 Mich 372; 123 NW 1108 (1909), the defendants had sued out a writ of replevin against Powers, pursuant to which an officer had seized 16 lambs. Powers had sold the lambs to another three days before the writ was issued and was in the act of delivering them to the buyer when they were seized. After obtaining a favorable verdict in the replevin action, Powers brought an action for malicious prosecution and recovered a judgment from which defendants appealed. This Court held that a defendant in a replevin suit who at the time of seizure had no property interest in the goods taken could not maintain an action for malicious prosecution against the initiator of the replevin action. The Court's discussion demonstrates that it regarded actions for malicious prosecution of civil proceedings as maintainable only in special circumstances and did not read *Brand* and *Antcliff* as establishing a broader rule:

"We have, then, in the case at bar, this situation: The plaintiff seeks to recover damages for the malicious prosecution of a civil action, by which he was deprived of neither his liberty, reputation, nor property, but simply of the possession of property belonging to another. Pollock, in his work on Torts (8th ed), at page 316, states the rule as follows:

" 'Generally speaking, it is not an actionable wrong to institute civil proceedings without reasonable and probable cause, even if malice be proved. For, in contemplation of law, the defendant, who is unreasonably sued, is sufficiently indemnified by a judgment in his favor, which gives him his costs against the plaintiff.'

"See, also, *Quartz Hill [Consolidated] Gold Mining Co v Eyre,* LR 11 QBD 674; 52 LJQB(NS) 488 [1883], where it said:

" '[I]n the present day, and according to our present law, the bringing of an ordinary action, however maliciously, and however great the want of reasonable and probable cause, will not support a subsequent action for malicious prosecution.'

"This is the English rule, which has been somewhat modified in America. In 1 Cooley on Torts (3d ed), at page 345, the rule is stated to be that:

" 'In some cases an action may be maintained for the malicious institution of a civil suit, but the authorities are not entirely agreed what cases are embraced within the rule.'

special injury equivalent to a seizure of property as a result of the defendant's institution of civil

"Among those malicious civil suits giving a right of action, he enumerates arrest, attachment, garnishment, insanity cases, injunctions, receivers, and other suits that interfere with person or property. Under the last class of cases, he says (page 348):

" 'So a suit for malicious prosecution will lie where the plaintiff's property or business has been interfered with, by the appointment of a receiver, the granting of an injunction, or by writ of replevin.'

"As supporting the text touching writs of replevin, he cites *Brounstein v Sahlein,* 65 Hun [72 NY Sup] 365; 20 NYS 213 [1892]; *McPherson v Runyon,* 41 Minn 524; 43 NW 392; 16 Am St Rep 727 [1889]. Both of these cases have been examined. In the first, not only was the plaintiff's property interfered with, but his business was largely injured. In the second, property of the plaintiff had been taken on the writ.

"In our own state, the case of *Brand v Hinchman,* 68 Mich 590; 36 NW 664; 13 Am St Rep 362 [1888], is to some extent applicable. There, an attachment was sworn out by defendant, Hinchman, and placed in the sheriff's hands for service. A deputy visited Brand's store, but made no actual levy, the subject-matter of the suit being adjusted. This court found, however, that there was at least a technical taking and possession of Brand's property, and the proofs showed that damage resulted to his business as a result of the swearing out of the writ (without probable cause).

"The case of *Antcliff v June,* 81 Mich 477; 45 NW 1019; 10 LRA 621; 21 Am St Rep 533 [1890], is authority for the proposition that a gross and fraudulent abuse of the process of the court, resulting in damage, gives a right of action to the person sustaining the damage.

"But we have been unable to find a single adjudicated case (and counsel for plaintiff has called our attention to none), where it is held that the defendant in a replevin suit, having no property in the goods taken, may maintain an action for malicious prosecution against the unsuccessful plaintiff in the original action. The authorities are not harmonious upon the question, where the property of the defendant in the original action is taken, and upon that question we express no opinion." *Powers v Houghton,* 159 Mich 372, 373-374; 123 NW 1108 (1909).

In *Krzyszke v Kamin,* 163 Mich 290; 128 NW 190 (1910), the Court held, after surveying *Powers v Houghton, supra,* and a variety of texts and cases from other jurisdictions, that an action for malicious prosecution would lie where the defendant had obtained an injunction to restrain the plaintiff from disposing of his personal property on the strength of patently insufficient averments in a judgment creditor's bill, and where the plaintiff was unable to hold an advertised auction as scheduled because of the injunction—arguably the equivalent of a temporary seizure of his property.

*Tomkovich v Mistevich,* 222 Mich 425; 192 NW 639 (1923), *Scovera v Armbruster,* 257 Mich 340; 241 NW 231 (1932), and *Fisk v Powell,* 349 Mich 604; 84 NW2d 736 (1957), all concerned actions for maliciously obtaining an attachment.

proceedings. No decision of this Court holds that an action for malicious prosecution of civil proceedings can be maintained absent special injury, whatever the precise boundaries of that concept.

Nor had the Court of Appeals, prior to its decision in this case, declared other than in dictum that an action for the malicious prosecution of a civil action could be maintained without regard to whether the plaintiff had incurred special injury.[33]

## C

Since this Court has not heretofore declared that an action for malicious prosecution of civil pro-

[33] In *Leeseberg v Builders Plumbing Supply Co*, 6 Mich App 321; 149 NW2d 263 (1967), the defendant had obtained a writ of attachment which led to the plaintiff's warehouse being locked for two weeks.

In *Rowbotham v Detroit Automobile Inter-Ins Exchange*, 69 Mich App 142, 147; 244 NW2d 389 (1976), defendant insurer, having obtained a judgment against plaintiff to recoup an erroneously paid claim for damages arising out of an automobile accident, asked the court clerk to file a certificate of unsatisfied judgment with the Secretary of State, pursuant to a statute which the court later held inapplicable to the judgment in question. The Secretary of State suspended plaintiff's operator's license. Although the Court of Appeals said that "Michigan courts have clearly expanded [the tort of malicious prosecution] to include malicious civil proceedings", its holding is more limited: "We believe that a proceeding maliciously instituted to deprive a person of his operator's license can qualify as a proceeding warranting a tort suit, for the proceeding may adversely affect a legally protected interest. *Cf. Carver v Lykes*, 262 NC 345; 137 SE2d 139 (1964) (real estate broker's license)."

In *Carver*, p 352, the Supreme Court of North Carolina embraced the view that, "under certain circumstances, an action for malicious prosecution may be predicated upon the prosecution, institution, or instigation of an administrative proceeding where such proceeding is adjudicatory in nature and may adversely affect a legally protected interest". North Carolina follows the "English rule" and extends the tort of malicious prosecution only "to include the malicious institution of civil proceedings which involve an arrest of the person or seizure of property or which result in some special damage". *Id.*, p 352. "A driver's license, once issued, is a significant interest subject to constitutional due process protections", *Shavers v Attorney General*, 402 Mich 554, 599; 267 NW2d 72 (1978), citing *Bell v Burson*, 402 US 535, 539; 91 S Ct 1586; 29 L Ed 2d 90 (1971), and deprivation thereof may therefore be regarded as equivalent to a seizure of property, *i.e.*, special injury.

ceedings may be maintained in the absence of special injury, it remains to be decided whether we should so hold today. We are persuaded that the special injury requirement should be retained to limit the circumstances in which an action for the malicious prosecution of civil proceedings can be maintained.

Most commentators appear to favor abrogation of the special injury requirement to make the action more available and less difficult to maintain.[34] Their counsel should, however, be evaluated skeptically. The lawyer's remedy for a grievance is a lawsuit, and a law student or tort professor may be particularly predisposed by experience and training to see the preferred remedy for a wrongful tort action as another tort action. In seeking a remedy for the excessive litigiousness of our society, we would do well to cast off the limitations of a perspective which ascribes curative power only to lawsuits.

We turn to a consideration of Dean Prosser's criticisms of the three reasons commonly advanced by courts for adhering to the English rule. First, to the assertion that the costs awarded to the prevailing party are intended as the exclusive remedy for the damages incurred by virtue of the wrongful litigation, Prosser responds that "in the United States, where the costs are set by statute at trivial amounts, and no attorney's fees are allowed, there can be no pretense at compensation even for the expenses of the litigation itself".[35] This argument

---

[34] Prosser, *supra*, § 120, p 851; Note, *Promoting Recovery by Claimants in Iowa Malicious Prosecution Actions,* 64 Iowa L Rev 408 (1979); Note, *Malicious Prosecution: An Effective Attack on Spurious Medical Malpractice Claims?,* 26 Case Western Reserve L Rev 653, 657-662 (1976); Birnbaum, *Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions,* 45 Fordham L Rev 1003, 1090 (1977).

[35] Prosser, *supra*, § 120, p 851.

is compelling, but it does not necessarily justify an award of compensation absent the hardship of special injury or dictate that an award of compensation be assessed in a separate lawsuit. Second, to the arguments that an unrestricted tort of wrongful civil proceedings will deter honest litigants and that an innocent party must bear the costs of litigation as the price of a system which permits free access to the courts, Prosser answers that "there is no policy in favor of vexatious suits known to be groundless, which are a real and often a serious injury".[36] But a tort action is not the only means of deterring groundless litigation, and other devices may be less intimidating to good-faith litigants. Finally, in response to the claim that recognition of the tort action will produce interminable litigation, Prosser argues that the heavy burden of proof which the plaintiff bears in such actions will safeguard bona fide litigants and prevent an endless chain of countersuits. But if few plaintiffs will recover in the subsequent action, one may wonder whether there is any point in recognizing the expanded cause of action. If the subsequent action does not succeed, both parties are left to bear the expenses of two futile lawsuits, and court time has been wasted as well.

Although this case arises upon the plaintiff doctor's assertions that the defendant attorneys wrongfully prosecuted a medical malpractice action against him, if we were to eliminate the special injury requirement that expansion of the tort of malicious prosecution would not be limited to countersuits against attorneys by aggrieved physicians. An action for malicious prosecution of civil proceedings could be brought by *any* former defendant—person, firm or corporation, private or pub-

---

[36] *Id.*

lic—in whose favor a prior civil suit terminated, against the former plaintiff or the plaintiff's attorney or both. In expanding the availability of such an action the Court would not merely provide a remedy for those required to defend groundless medical malpractice actions, but would arm all prevailing defendants with an instrument of retaliation, whether the prior action sounded in tort, contract or an altogether different area of law.

This is strong medicine—too strong for the affliction it is intended to cure. To be sure, successful defense of the former action is no assurance of recovery in a subsequent tort action, but the unrestricted availability of such an action introduces a new strategic weapon into the arsenal of defense litigators, particularly those whose clients can afford to devote extensive resources to prophylactic intimidation.

At present, a plaintiff and his attorney who know that they have less than an airtight case must, in deciding whether to continue the case or in evaluating a settlement offer, consider whether if they proceed to trial they will invest more and recover less or nothing. If the instant plaintiff's approach is adopted, all plaintiffs and their attorneys henceforth must also weigh the likelihood that if they persevere in the action and receive an unfavorable decision, they will not only take nothing but also be forced to defend an action for malicious prosecution of civil proceedings. Even if the plaintiff and his attorney had abundant cause for bringing and continuing the action and acted without malice, the expense and annoyance foreseeably involved in even a successful defense of the countersuit may induce them to abandon a problematic claim or to settle the case for less than they would otherwise accept. Some will say

amen, but this would push the pendulum too far in favor of the defense, more than is necessary to rectify the evil to which this effort is directed.

Because many actions for malicious prosecution of civil proceedings will present questions of fact concerning what measures the former plaintiff and his attorney took, and with what state of mind, the prospect of having the countersuit submitted to a jury capable of returning a large verdict including damages for business loss, injury to reputation and emotional distress will loom large indeed, especially since many parties or attorneys do not have or may be unable to obtain insurance against such liability.

The cost of legal malpractice insurance is bound to increase, assuming coverage against such liability is available. (The currently advertised State Bar group program seems to include such coverage.) Litigators may be excluded from group programs and find that they cannot obtain coverage at reasonable rates. A legal malpractice crisis may arise as serious as the medical malpractice crisis.

Permitting a tort action for wrongful civil proceedings to be maintained absent special injury to the plaintiff could easily generate a surprising number of such actions. Not only doctors, but most defendants, react to a lawsuit with hurt feelings and outrage. They may impute malicious motives to the plaintiff and the opposing attorney and be eager to exact retribution if they prevail. There is no shortage of lawyers who are eager to develop new specialties and would be willing to accept such actions on a contingent fee basis. Some product manufacturers and insurance companies may routinely file countersuits with a view to inhibiting plaintiffs or their attorneys from commencing actions against them or their insureds. The indis-

criminate filing of countersuits may lead to actions for wrongfully proceeding with a wrongful civil proceedings action. Embittered litigants whose differences are more emotional than legal will have added opportunities to continue their strife.

The cure for an excess of litigation is not more litigation. Meritorious as well as frivolous claims are likely to be deterred. There are sure to be those who would use the courts and such an expanded tort remedy as a retaliatory or punitive device without regard to the likelihood of recovery or who would seek a means of recovering the actual costs of defending the first action without regard to whether it was truly vexatious.

Other courts have, in the last few years, refused to abandon the special injury requirement. In a 1977 decision arising out of an action brought by physicians who had been sued for medical malpractice by a plaintiff they had not treated, the Oregon Supreme Court rejected an invitation to change the law of that jurisdiction.[37] The court suggested that the proposed change was more appropriate for legislative consideration, especially since two recent legislative examinations of the medical malpractice "problem" had followed decisions reaffirming the special injury requirement without resulting in any change in the elements of an action for malicious prosecution of civil proceedings.

In this connection, it is noteworthy that the instant action is a test case brought at about the same time as the Legislature and this Court were called upon to adopt a number of measures to alleviate the medical malpractice crisis. The Legislature could create a special cause of action in favor of physicians without the potential impact

---

[37] *O'Toole v Franklin, supra,* pp 522-524.

on the entire litigation system of a general cause of action for wrongful civil proceedings. No court, although some have been asked to do so, has been persuaded that a principled distinction could be drawn by a court of law on the basis that injury to the reputation of a doctor is a special injury warranting exceptional solicitude not accorded other aggrieved litigants.

In 1978 the District of Columbia Court of Appeals rejected a similar effort by a physician.[38] In 1979, the Washington Supreme Court adhered to the special injury requirement, concluding that the limitation "still serves the dual purpose of allowing the honest plaintiff to press his case without threat of suit and of limiting vexatious lawsuits".[39] Recent Illinois[40] and Rhode Island[41] decisions are in agreement. The list of states ad-

---

[38] The court said:

"The purpose of the special injury rule, however, is to strike a balance between allowing free access to the courts for the vindication of rights without fear of a resulting suit, and the undue exercise of such right. *Davis v Boyle Bros, Inc,* 73 A2d 517, 521 (DC Mun App, 1950). Appellant's argument, if accepted, would upset that delicate balance. The nature of his profession, given its profound impact on the lives of those with whom he deals, cannot be allowed to insulate him from potential liability. In order to maintain a free access to the courts by persons with grievances who might otherwise be restrained from seeking redress because of their fear of liability should they fail, the special injury rule has consistently been upheld.

" 'The limitation is sound. When disputes reach the litigious stage, usually some malice is present on both sides. Friendly tort suits are not common. Nor is existence or want of probable cause always easy to determine until the event of the litigation is known. Some margin of safety in asserting rights, though they turn out to be groundless and their assertion accompanied by some degree of ill-will, must be maintained. Otherwise litigation would lead, not to an end of disputing, but to its beginning, and rights violated would go unredressed for fear of the danger of asserting them.' *Melvin v Pence,* 76 US App DC 154, 157; 130 F2d 423, 426 (1942)." *Ammerman v Newman,* 384 A2d 637, 641 (DC App, 1978).

[39] *Gem Trading Co, Inc v Cudahy Corp,* 92 Wash 2d 956, 965; 603 P2d 828 (1979).

[40] *Berlin v Nathan,* 64 Ill App 3d 940; 381 NE2d 1367 (1978).

[41] *Jacques v McLaughlin,* — RI —; 401 A2d 430 (1979).

hering to the special injury rule includes a number of other major jurisdictions.[42]

## V

Apart from special injury, elements of a tort action for malicious prosecution of civil proceedings are (1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for those proceedings, and (3) "malice", more informatively described by the Restatement as "a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based".[43]

The following discussion addresses the chief concern of this case: the conditions under which the attorney for an unsuccessful plaintiff may be held liable.

## A

The absence of probable cause in bringing a civil action may not be established merely by showing that the action was successfully defended.[44] To require an attorney to advance only those claims that will ultimately be successful would place an intolerable burden on the right of access to the courts.

The Court of Appeals adopted, and plaintiff endorses, the standard for determining whether an

---

[42] The sources cited in fn 23, *supra,* agree that New York, Pennsylvania, New Jersey, Maryland, Ohio, Wisconsin and Texas also follow the English rule.

[43] See, generally, Prosser, *supra,* § 120, pp 850-856, and 3 Restatement Torts, 2d, §§ 674-681B, pp 452-473. Propriety of purpose is discussed in § 676.

[44] See Prosser, *supra,* § 120, p 855. *Cf. Drobczyk v Great Lakes Steel Corp,* 367 Mich 318, 322; 116 NW2d 736 (1962).

attorney had probable cause to initiate and continue a lawsuit articulated in *Tool Research & Engineering Corp v Henigson,* 46 Cal App 3d 675, 683-684; 120 Cal Rptr 291 (1975):

"The attorney is not an insurer to his client's adversary that his client will win in litigation. Rather, he has a duty 'to represent his client zealously * * * [seeking] any lawful objective through legally permissible means * * * [and presenting] for adjudication any lawful claim, issue, or defense.' (ABA, Code of Professional Responsibility, EC 7-1, DR 7-101[A][1] * * *.) So long as the attorney does not abuse that duty by prosecuting a claim which a reasonable lawyer would not regard as tenable or by unreasonably neglecting to investigate the facts and law in making his determination to proceed, his client's adversary has no right to assert malicious prosecution against the attorney if the lawyer's efforts prove unsuccessful.

\* \* \*

"The attorney's obligation is to represent his client honorably and ethically, and he may, without being guilty of malicious prosecution, vigorously pursue litigation in which he is unsure of whether his client or the client's adversary is truthful, so long as that issue is genuinely in doubt."

The *Henigson* court also said: "An attorney has probable cause to represent a client in litigation when, after a reasonable investigation and industrious search of legal authority, he has an honest belief that his client's claim is tenable in the forum in which it is to be tried."

In our view, this standard, while well-intentioned, is inconsistent with the role of the attorney in an adversary system.

Our legal system favors the representation of

litigants by counsel.[45] Yet the foregoing standard appears skewed in favor of non-representation; the lawyer risks being penalized for undertaking to present the client's claim to a court unless satisfied, after a potentially substantial investment in investigation and research, that the claim is tenable.

A lawyer may be confronted with the choice between allowing the statute of limitation to run upon a claim with which the client has only recently come forward, or promptly filing a lawsuit based on the information in hand. Such dilemmas are particularly likely to arise in connection with medical malpractice claims because a statute provides a six-month limitation period for bringing an action based on a belatedly discovered claim[46] as an alternative to the normal two-year limitation period for malpractice actions.[47] Time will not always permit "a reasonable investigation and industrious search of legal authority" before the lawyer must file a complaint to preserve the client's claim—and thus, perhaps, avoid an action by the client for legal malpractice.

In medical malpractice actions the facts relevant to an informed assessment of the defendant's liability may not emerge until well into the discovery process. Sometimes the relevant facts are not readily ascertainable. In the instant case, for example,

---

[45] *Cf.* Canon 2:

"A lawyer should assist the legal profession in fulfilling its duty to make legal counsel available."

EC 2-26 states:

"A lawyer is under no obligation to act as adviser or advocate for every person who may wish to become his client; but in furtherance of the objective of the bar to make legal services fully available, a lawyer should not lightly decline proffered employment."

[46] MCL 600.5838(2); MSA 27A.5838(2).

[47] MCL 600.5805(4); MSA 27A.5805(4); *cf. Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973).

defendants maintain that their efforts to acquire
Mrs. Serafin's medical records were rebuffed until
they commenced suit and thereupon became able
to invoke established discovery procedures and the
implicit power of the court to compel disclosure; it
may be the practice of some doctors or hospitals to
refuse to release medical records until a lawsuit
has been commenced.[48]

Moreover, the *Henigson* standard suggests
rather ominously that every time a lawyer repre-
senting, say, a medical malpractice plaintiff en-
counters a fact adverse to the client's position or
an expert opinion that there was no malpractice,
he must immediately question whether to persev-
ere in the action.[49] An attorney's evaluation of the
client's case should not be inhibited by the knowl-
edge that perseverance may place the attorney
personally at risk; the next fact or the next medi-
cal opinion may be the one that makes the case,[50]

---

[48] In 1975 a task force composed of representatives from the State
Bar of Michigan and a number of medical organizations, meeting to
discuss solutions to the problem of escalating medical malpractice
insurance premiums and the increasing volume of medical malprac-
tice litigation, issued a list of recommendations which included the
enactment of legislation "to allow the issuance of a special 'record
subpoena' for the obtaining of medical records without the necessity
of a lawsuit being commenced", so long as the patient consented to
release of the records. *Recommendations of the Joint Medical/Legal
Task Force on Medical Malpractice,* 54 Mich St B J 81, 82 (1975).

[49] Compare the heading of the principal portion of plaintiff's brief
arguing for recognition of a cause of action against a plaintiff's lawyer
*for negligence,* set out in fn 5, *supra.*

[50] *Szlinis v Moulded Fiber Glass Companies, Inc,* 80 Mich App 55;
263 NW2d 282 (1977), *lv gtd* 402 Mich 925 (1978), *app dismissed by
stipulation* 407 Mich 893 (1979), although not a medical malpractice
case, illustrates how late-arising developments may provide a plain-
tiff's lawyer with clear evidence of liability where before there was
only suspicion. Four people perished in a boating accident in June,
1969. According to plaintiff-appellant's brief in this Court, pp 4-5, the
first floating tests and inspections failed to reveal any defects in the
hull. Subsequent tests conducted in August and September, 1970
revealed certain abnormalities which of themselves were not striking.
It was only in January, 1971, that further tests by naval architects
revealed that a combination of defects rendered it virtually impossible

and such developments may occur even on the eve of trial.

Indeed, a jury-submissible claim of medical malpractice may sometimes be presented even without specific testimony that the defendant physician violated the applicable standard of care.[51] Thus, a lawyer may proceed in the good-faith belief that his proofs will establish a prima facie case of medical malpractice without expert testimony, only to find that the court disagrees. Such conduct is not the equivalent of proceeding without probable cause.

Indeed, whether an attorney acted without probable cause in initiating, defending or continuing proceedings on behalf of a client should not normally depend upon the extent of the investigation conducted. The Code of Professional Responsibility does not expressly impose any duty upon a lawyer to conduct an independent investigation of the merits of a client's claim. DR 7-102(A), upon which plaintiffs in the instant action rely, states only that a lawyer shall not:

"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client *when he knows or when it is obvious that such action*

to right the boat if it capsized—not an uncommon occurrence in sailing.

In *Szlinis* the complaint was not filed until after the tests were completed. But suppose the complaint had been filed shortly after the accident and subsequent preliminary testing for defects had been unproductive. Had the plaintiff's attorney then evaluated the case in the shadow of a potential tort action or motion to recover litigation expenses by a boat manufacturer claiming injury to business reputation and loss of sales, might he not have decided to discontinue the action rather than conduct additional tests?

[51] See *Orozco v Henry Ford Hospital*, 408 Mich 248; 290 NW2d 363 (1980).

We do not suggest that the prior action in the instant matter was a case where expert testimony was not necessary.

*would serve merely to harass or maliciously injure
another.*

"(2) *Knowingly* advance a claim or defense that is
unwarranted under existing law, except that he may
advance such claim or defense if it can be supported by
good faith argument for an extension, modification, or
reversal of existing law." (Emphasis supplied.)

DR 7-102(A) and the other professional stan-
dards to which plaintiff refers[52] consistently incor-
porate a requirement of *scienter* as to groundless-
ness or vexatiousness, not a requirement that the
lawyer take affirmative measures to verify the
factual basis of his client's position. A lawyer is
entitled to accept his client's version of the facts
and to proceed on the assumption that they are
true absent compelling evidence to the contrary.[53]
The only general limitation on the lawyer's accep-
tance of employment is found in DR 2-109(A),[54] the

[52] As already noted, the negligence section of plaintiff's brief refers
to Code of Professional Responsibility and Canons, Canon 1, DR 1-
102(A), Canon 6, DR 6-101(A), Canon 7, DR 7-102(A), and various
Ethical Considerations associated with Canon 7, especially EC 7-4 and
EC 7-10. All eight divisions of DR 7-102(A) make reference to the
lawyer's knowledge in defining prohibited conduct.

[53] *Cf. Murdock v Gerth,* 65 Cal App 2d 170, 179; 150 P2d 489, 493
(1944):

"It would be inimical to the administration of justice if an attorney
were to be held liable to a malicious prosecution action where, after
an honest, industrious search of the authorities, upon facts stated to
him by his client, he advises the latter that he has a good cause of
action, although the courts upon a trial of such action decide that the
attorney's judgment was erroneous. If the issue which the attorney is
called upon to decide is fairly debatable, then under his oath of office,
he is not only authorized but obligated to present and urge his client's
claim upon the court. And if it subsequently is determined that the
position honestly taken by the attorney was erroneous he should be
relieved from responsibility."

[54] "A lawyer shall not accept employment on behalf of a person if
he knows or it is obvious that such a person wishes to:

"(1) Bring a legal action, conduct a defense, or assert a position in
litigation, or otherwise have steps taken for him, merely for the
purpose of harassing or maliciously injuring any person.

"(2) Present a claim or defense in litigation that is not warranted
under existing law, unless it can be supported by good faith argument

language of which parallels DR 7-102(A). And, although DR 6-101(A)(2) states that a lawyer shall not "[h]andle a legal matter without preparation adequate in the circumstances", that preparation need not entail verification of the facts related by the client.

Framed as it is in terms of "reasonableness", the *Henigson* standard is difficult to reconcile with the lawyer's obligation to represent his client's interests zealously.[55] "Zealous representation" contemplates that the lawyer will go to the limits for his client, representing him loyally, tenaciously and single-mindedly. The question of whether a lawyer "abused that duty" is not a matter of what a hypothetical reasonable practitioner would have done in the same circumstances, but of whether the lawyer's conduct was beyond the limits of reason or the bounds of the law[56] although another "reasonable" lawyer, or many such lawyers, might not have acted similarly.

The Restatement's definition of probable cause provides ample guidance whether damages are sought from a lawyer, his client or both:

---

for an extension, modification, or reversal of existing law." DR 2-109(A), Acceptance of Employment.

[55] "A lawyer should represent a client zealously within the bounds of the law." Canon 7.

[56] See EC 7-3:

"Where the bounds of law are uncertain, the action of a lawyer may depend on whether he is serving as advocate or adviser. A lawyer may serve simultaneously as both advocate and adviser, but the two roles are essentially different. In asserting a position on behalf of his client, an advocate for the most part deals with past conduct and must take the facts as he finds them. By contrast, a lawyer serving as adviser primarily assists his client in determining the course of future conduct and relationships. While serving as advocate, a lawyer should resolve in favor of his client doubts as to the bounds of the law. In serving a client as adviser, a lawyer in appropriate circumstances should give his professional opinion as to what the ultimate decisions of the courts would likely be as to the applicable law."

"One who takes an active part in the initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either

"(a) correctly or reasonably believes that under those facts the claim *may* be valid under the applicable law, or

"(b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information."[57] (Emphasis supplied.)

As applied to a plaintiff's lawyer, this standard would allow lack of probable cause to be found where the lawyer proceeded with knowledge that the claim had no factual or legal basis, but would impose no obligation to investigate if the lawyer could reasonably believe the facts to be as the client alleged.

## B

This Court has said, in opinions addressed to the tort of malicious prosecution, that malice may be inferred from the facts that establish want of probable cause, although the jury is not required to draw that inference.[58] This rule, developed in cases where damages were sought from a layperson who initiated proceedings,[59] fails to make sufficient allowance for the lawyer's role as advocate and should not be applied in determining whether a lawyer acted for an improper purpose.

A client's total lack of belief that the action he initiates or continues can succeed is persuasive evidence of intent to harass or injure the defen-

---

[57] 3 Restatement Torts, 2d, § 675, pp 457-458.

[58] *Hamilton v Smith,* 39 Mich 222 (1878); *Drobczyk v Great Lakes Steel Corp, supra; Renda v International Union, UAW,* 366 Mich 58, 100-101; 114 NW2d 343 (1962).

[59] *Hamilton v Smith, supra; Carson v Edgeworth,* 43 Mich 241; 5 NW 282 (1880); *LeClear v Perkins,* 103 Mich 131; 61 NW 357 (1894).

dant by bringing the action. But a lawyer who is unaware of such a client's improper purpose may, despite a personal lack of belief in any possible success of the action, see the client and the claim through to an appropriate conclusion without risking liability. 3 Restatement Torts, 2d, § 674, comment *d,* states:

"An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable cause for his action (see § 675); *and even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim.* (See § 676). An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances." (Emphasis supplied.)

While a client's decision to proceed with litigation although he knows that the facts are not as alleged, or that a proper application to the facts of existing law (or any modification thereof which can be advanced in good faith) will not support the claim, is indicative of the client's ulterior, malicious motive, that inference cannot so easily be drawn from conduct of a lawyer who owes his client a duty of representation and is unaware of the client's improper purpose. The lawyer who "acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim", albeit with knowledge that the claim is not tenable, should not be subject to liability on the thesis that an inference of an improper purpose may be

drawn from the lawyer's continuing to advance a claim which he knew to be untenable.[60]

The Restatement defines the mental element of the tort of wrongful civil proceedings as "a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based". A finding of an improper purpose on the part of the unsuccessful attorney must be supported by evidence independent of the evidence establishing that the action was brought without probable cause.[61]

We affirm that portion of the Court of Appeals decision which upheld summary judgment in favor of defendants on plaintiff's claims sounding in negligence and abuse of process. With respect to plaintiff's claim for malicious prosecution, we reverse the decision of the Court of Appeals and affirm the trial court's grant of summary judgment; we do so on the ground that an action for malicious prosecution of a civil action may not be brought absent special injury and the plaintiff failed to plead special injury.

KAVANAGH, WILLIAMS, and RYAN, JJ., concurred with LEVIN, J.

LEVIN, J. *(concurring)*. Much of the discussion of the problem of unjustified litigation suffers. from

---

[60] In most, if not all, attorney-client relationships, decision-making authority ultimately rests with the client. A client may, in apparent good faith, insist upon pressing the claim although the attorney has explained that it has no chance of succeeding. An attorney's ability to withdraw from representation is limited if the client objects.

[61] A contingent fee arrangement or the expectation of the attorney that he will ultimately receive a fee for his services is not evidence of an improper purpose. In contrast, a purpose to secure an improper adjudication of the client's claim, as by coercing a settlement unrelated to the merits from an opponent who wishes to avoid the harassment, expense or delay of letting the lawsuit run its course, is an improper purpose. See 3 Restatement Torts, 2d, § 674, comment *d*, p 453.

an undue focus upon the need to compensate the injury suffered by the defendant subjected to a groundless and malicious action. Groundless civil litigation is, however, more than an affliction visited upon a few scattered individuals; it besets the judicial system as a whole. It is, therefore, appropriate to think of it as a systemic problem and to fashion a remedy which preserves and strengthens the integrity of the civil litigation system rather than randomly providing a fortuitous amount of compensation in a handful of isolated cases.

In England, the losing party in a civil action is ordinarily required to reimburse the prevailing party for that portion of the latter's litigation costs which is determined by the judge or an officer of the court to have been "necessary".[1] The recovery thus obtained is usually incomplete, but greater costs can be awarded if the litigation was vexatious or groundless.[2]

The English system has been criticized because the risk of responsibility for a portion of the opponent's actual costs may deter debatable, good-faith claims.[3]

Commentators have also been skeptical of the potential of court-administered sanctions within the original lawsuit as a remedy for groundless litigation because in this country the costs awarded to the prevailing party in a civil action are typically fixed by statute at amounts which pale beside the actual costs incurred in litigation, and American courts have generally been inclined to leave revision of costs schemes to the legislatures.[4]

---

[1] Goodhart, *Costs,* 38 Yale L J 849, 854-862 (1929).

[2] *Id.,* 861-862.

[3] *Ackerman v Kaufman,* 41 Ariz 110, 114; 15 P2d 966 (1932). But see Goodhart, *supra,* pp 874-876.

[4] Note, *Groundless Litigation and the Malicious Prosecution Debate:*

I am of the opinion, however, that this Court can appropriately devise an approach to wrongful litigation which is capable of providing both an appropriate measure of deterrence and reasonable compensation for wronged litigants without imperiling the right of free access to the courts. The remedy, quite simply, is to recognize the inadequacy of existing provisions for the taxation of costs and to adopt a new and distinct court rule authorizing the judge to whom a civil action is assigned to order payment of the prevailing party's actual expenses, including reasonable attorneys' fees and limited consequential damages, where the action was wrongfully initiated, defended or continued.[5] Depending upon the circumstances, payment might be required of the attorney, the client or both. The factual questions implicit in such an evaluation of the losing side's conduct would be resolved by the judge after a prompt post-termination hearing at which the parties could call witnesses and they and their attorneys could testify.

The foundation for developing such a comprehensive structure for controlling vexatious litigation is already in place. GCR 1963, 111.6, provides:

*A Historical Analysis,* 88 Yale L J 1218, 1232-1233 (1979). See, also, McCormick, Damages, ch 8, pp 234-259.

[5] Adoption of such a rule appears to be an appropriate exercise of this Court's plenary power over practice and procedure in Michigan courts. See *Perin v Peuler (On Rehearing),* 373 Mich 531, 540-541; 130 NW2d 4 (1964).

Section 2401 of the Revised Judicature Act provides:

"Except as otherwise provided by statute, the supreme court shall by rule regulate the taxation of costs." MCL 600.2401; MSA 27A.2401. But GCR 1963, 16, states:

"Rules of practice set forth in any statute, not in conflict with any of these rules, shall be deemed to be in effect until superseded by rules adopted by the Supreme Court."

Any conflict between a statute and implementation by court rule of the proposal set forth in this opinion can thus be resolved in favor of the rule. Such conflict is unlikely in any event because the instant proposal does not concern costs, but expenses above and beyond costs.

"Unwarranted Allegations and Denials. If it appears at the trial that any fact alleged or denied by a pleading ought not to have been so alleged or denied and such fact if alleged is not proved or if denied is proved or admitted, the court may, if the allegation or denial is unreasonable, require the party making such allegation or denial to pay to the adverse party the reasonable expenses incurred in proving or preparing to prove or disprove such fact as the case may be, including reasonable attorney fees."

The principles of GCR 1963, 111.6, can readily be extended to wrongful litigation and defense as well as wrongful pleading and can be made applicable regardless of the stage at which the prior litigation terminates; the award of fees and expenses should be limited to those incurred after the point at which the action should have been discontinued or liability admitted.

The sum recoverable should include all fees and administrative charges incurred because of the litigation as well as reasonable attorney's fees. The judge could award a prevailing defendant in a professional malpractice case an additional sum for loss of income-producing time and injury to professional reputation or business resulting from the wrongful action if the amount is capable of being calculated with reasonable certainty.[6]

---

[6] The proposed procedure would not appear to violate a constitutional right of jury trial. US Const, Am VII, preserving the right of jury trial in common-law suits where the amount in controversy exceeds twenty dollars, does not apply to the states through the Fourteenth Amendment. *Melancon v McKeithen,* 345 F Supp 1025 (ED La, 1972), *aff'd per curiam sub nom Mayes v Ellis,* 409 US 943; 93 S Ct 289; 34 L Ed 2d 214 (1972).

Const 1963, art 1, § 14, preserves the right of jury trial only in causes of action which were part of the common law prior to its adoption. See *Conservation Dep't v Brown,* 335 Mich 343, 346; 55 NW2d 859 (1952).

The procedure suggested here would not involve a cause of action in the usual sense of that term, and certainly not one predating the Michigan Constitution. See, generally, *Curtis v Loether,* 415 US 189,

The rule could provide that the standard to be applied by the judge in determining whether such an award should be made is whether the losing party or his attorney had proceeded without probable cause and for an improper purpose.[7] So defining the inquiry, in terms of the traditional elements of a cause of action for malicious prosecution of civil proceedings, allows the judge to consult existing precedent for guidance.

Having such a determination made by the judge to whom the original proceeding was assigned would have a number of advantages over assessment of these questions by judge and jury in a separate tort action:

First, a strategy for evaluating the propriety of litigation which is administered exclusively by

194-195; 94 S Ct 1005; 39 L Ed 2d 260 (1974); *Atlas Roofing Co v Occupational Safety & Health Review Comm,* 430 US 442; 97 S Ct 1261; 51 L Ed 2d 464 (1977).

[7] The rule could incorporate the basic concepts of an action for wrongful civil proceedings—absence of probable cause and malice (improper purpose)—as expressed in the Restatement Torts, 2d, §§ 674, 675, 676, 681 and 681A, but differ in the following respects:

(i) an award could be made to a plaintiff as well as to a defendant who prevails in the underlying cause where the requisite elements (absence of probable cause and malice in maintaining or defending the cause and damages) are established;

(ii) an award could be restricted to damages for specific pecuniary loss, including actual attorney fees and other expense reasonably incurred in maintaining or defending the proceedings and any harm to professional or business reputation; recovery for defamation not affecting professional or business reputation or for emotional distress need not be provided for;

(iii) the judge who presided in the underlying cause claimed to have been wrongfully brought or defended could decide the matter without a jury following a hearing which would be required to be concluded within a specified time which parallels the time for a motion for a new trial or judgment notwithstanding the verdict; a motion seeking such an award could be required to be filed by the prevailing party within a limited time after entry of judgment in the underlying cause; hearing on probable cause, malice and damages could be required to be concluded promptly after filing of the motion; findings of fact and conclusions of law could be required to be filed by the judge soon thereafter; any appeal could be consolidated with an appeal on the merits of the underlying cause.

judges is more susceptible of consistent application and careful supervision than a strategy which relies on a group of laymen chosen at random, often for one day and one trial. Confiding the question solely to the judge avoids the bifurcation of function associated with jury trial on the critical issue of probable cause in an action for malicious prosecution of civil proceedings.[8] Limiting recovery to actual pecuniary loss, thereby eliminating recovery for emotional distress, and relying on a judge to assess damages, combined with the greater control that appellate courts exercise over a judge's findings as compared to a jury's verdict, should tend to avoid awards which might intimidate good-faith litigants.

Second, the judge would usually be familiar with the history of the case; the necessary evidence could be adduced and the relevant findings made in far more efficient fashion than if a new action and a separate trial before a different judge were required.

Third, parties who might be reluctant to initiate further litigation although they felt themselves wronged would be more likely to avail themselves of internal sanctions than of the opportunity to start a separate action which would take its place on the crowded docket and which the defendants would be likely to resist with all available means.

Groundless litigation diverts judicial resources which could otherwise be devoted to more deserving cases and represents a challenge to this Court's "general superintending control over all

---

[8] 3 Restatement Torts, 2d, § 681B, pp 472-473, provides that the court determines whether "the defendant had probable cause for his action" but the jury determines "the circumstances under which the proceedings were initiated in so far as may be necessary to enable the court to determine whether the defendant had probable cause for initiating them".

courts"[9] comprising Michigan's "one court of justice".[10] By adopting a court rule this Court would address the problem directly and in a manner compatible with its responsibility to exercise close control and supervision.

This is unmistakably a test case, brought primarily to secure a change in the law. If a court rule responsive to the problem of wrongful litigation is ultimately adopted, the plaintiff and others who have rallied to his cause may win the war even if they have lost this battle.

In pursuing this case, the plaintiff and his supporters have taken a leading role in directing our attention to a widely held concern that today the courts are burdened and innocent parties harassed by an epidemic of frivolous lawsuits. The measure proposed here will put the validity of that perception to the test. All those who feel that they have been made the victims of wrongful litigation would be able to seek a prompt remedy without facing the difficulties and delay inherent in a subsequent tort action.

The effectiveness of such a rule would depend upon the vigilance of the judges who would apply it. The opinion of the Court in the instant case describes certain instances in which sanctions should not be imposed against an attorney. Nothing in the opinion of the Court should, however, be understood as indicating that the Court is unwilling to commit itself to the imposition of sanctions against an attorney where it is appropriate.

WILLIAMS, J., concurred with LEVIN, J.

COLEMAN, C.J. *(concurring in part, dissenting in*

---

[9] Const 1963, art 6, § 4.

[10] Const 1963, art 6, § 1.

part). I concur with parts II and III of the majority opinion which hold that the plaintiff has failed to state actionable claims under theories of negligence or abuse of process. I dissent from the portion of the majority opinion that requires proof of special injury[1] in malicious prosecution cases. I concur with Justice Moody's result and add the following to explain my disagreement with the analysis employed by the majority in requiring special injury in malicious prosecution cases.

I

The majority concludes that proof of special injury is necessary in order "to limit the circumstances in which an action for the malicious prosecution of civil proceedings can be maintained". The stated reason for this limitation is not to deter litigants who have meritorious claims from seeking a proper adjudication. The problem with this reasoning arises from the fact that it relies on an incidental effect of the special injury requirement.

Although the majority's stated concern is to protect meritorious claims, it is nowhere con-

---

[1] Special injury generally includes interference with a person or property, such as through arrest or attachment, or an injury that would not ordinarily result in all similar suits. *Jacques v McLaughlin,* — RI —; 401 A2d 430 (1979); *Schwartz v Schwartz,* 366 Ill 247; 8 NE2d 668 (1937); *Gem Trading Co, Inc v Cudahy Corp,* 92 Wash 2d 956; 603 P2d 828 (1979).

In this case, the plaintiff alleged the following damages:

"[T]he cost of defending the aforesaid cause and the appeal, an increase in his annual malpractice insurance premiums for so long as he practices medicine, the loss of two young associates from his office who could no longer afford to pay the increased malpractice insurance premiums thereby requiring him to work excessive hours without relief, damages to his reputation as a physician and surgeon, embarrassment and continued mental anguish."

The majority concludes that none of these damages constitute "special injury".

tended in the opinion that the special injury requirement serves to distinguish meritorious from frivolous litigation. Nor is there a contention that special injury cases represent injury that is more egregious than in other cases. The majority's position is comprehensible only because of an unstated, although correct, premise: *most litigation does not involve special injury.*

Two noteworthy results follow from using the special injury requirement in such a way. First, in cases in which no special injury can be alleged, the non-special injury caused by the most frivolous malpractice litigation cannot be compensated. Second, assuming, as the majority does that the special injury requirement is important to protect meritorious claimants, such claimants may be deterred from raising meritorious claims in cases where the potential defendants would be able to allege special injury in a subsequent malicious prosecution case. Thus, by invoking the special injury requirement on behalf of meritorious litigants, the meritorious and frivolous claims alike are protected when no special injury can be alleged. Neither is protected when a special injury allegation might be made.

Thus, the arguments that the majority advances in favor of the special injury requirement, in reality, have no basis within the content of the special injury requirement. The same arguments could be advanced as forcefully in favor of abolishing the malicious prosecution action altogether, or even in favor of something so absurd as requiring that all malicious prosecution plaintiffs be from Kansas.

A far more reasonable approach would be to look to other elements of the malicious prosecution cause of action—such as *no probable cause* and an

*improper motive*—to provide the necessary protection for bona fide litigants.

However, reliance on an incidental effect of the special injury requirement is not my only objection to the majority position. My colleagues cloud the issue by such statements as, "The cure for an excess of litigation is not more litigation". The issue here is not finding a cure for excessive litigation. *The issue is whether the harm rendered by wrongful litigation is compensable.*

The majority, in responding to Dean Prosser's criticism of the special injury requirement, wonders whether there are not other means of deterring groundless litigation and whether "if few plaintiffs will recover in the subsequent action, * * * there is any point in recognizing the expanded cause of action". Further, the majority asserts, "[i]f the subsequent action does not succeed, both parties are left to bear the expenses of two futile lawsuits, and court time has been wasted as well".

Although this reasoning bears a certain initial attractiveness, it does not withstand closer examination. First, for any given tort there probably are means other than a lawsuit for deterring its commission. Second, even if we are able to predict the number of future malicious prosecution plaintiffs who would be successful—which we are not able to do—I do not agree that such a prediction would be pertinent. The argument that because few would be compensated, none should be, is novel. Third, any time that a cause of action is expanded, there is the possibility that future suits seeking to come within its scope will fail. In determining whether a tort cause of action should be expanded, we do not normally find significant the fact that unsuccessful suits may be brought. I do not agree that this

. factor should be given added importance simply
because the wrong to be compensated is itself a
lawsuit.

## II

Central to this case is the judicial process of
weighing two different potential harms caused by
two different types of groundless litigation, only
one of which has been given much consideration
by the majority. On the one hand, there is the
potential harm which could be caused by ground-
less malicious prosecution suits. On the other
hand, there is the harm caused by all other types
of groundless litigation. In upholding the special
injury requirement, the majority has engaged in
much speculation as to what the effects of ground-
less malicious prosecution suits might be. Little, if
any, consideration is given to the harmful effects
of other groundless litigation. The retention of the
special injury requirement leaves lawyers, in most
cases, free from the concern of defending one type
of potentially groundless litigation, but at the
expense of subjecting the rest of society to the
threat of suffering many kinds of groundless litiga-
tion without recompense.

The one-sided treatment is especially apparent
with respect to the argument regarding the possi-
ble increase of legal malpractice insurance premi-
ums. The other side of the coin is that physician
plaintiffs and amici obviously conclude, whether
correctly or incorrectly, that their defense of
groundless litigation has contributed to the high
cost of medical malpractice insurance policies with
resultant higher costs to patients. Redress for
frivolous litigation, they believe, might provide
some relief. The majority, when suggesting that
the defense of groundless malicious prosecution

cases might have some effect on legal malpractice insurance, seems unaware or unconcerned that a different type of groundless litigation may already be having an effect on medical malpractice insurance.

Prediction of how malicious prosecution suits might affect one type of insurance or another is speculative at best. However, one would not expect that the adverse effects of groundless litigation would affect attorneys, or the bringing of lawsuits, to a greater extent than the threat of groundless lawsuits presently affects the rest of our society.

On balance, the effect which malicious prosecution cases without the special injury requirement would have on access to the courts would be less than the effect which other types of groundless litigation has on society. Importantly, the elements of such a malicious prosecution case (lack of probable cause and improper motive) are narrow in scope and not easily met. This narrowness would likely mean that frivolous malicious prosecution cases would more clearly show their frivolous nature than groundless litigation of other varieties. Also, unlike in other cases, attorneys are the ones who must consider what threat, if any, a groundless malicious prosecution suit presents. Certainly, attorneys are in a better position than other members of society to recognize groundless litigation for what it is. Thus, they are in a better position to limit the extent to which the fear of a frivolous malicious prosecution action will affect their conduct.

Also significant in determining the effects of malicious prosecution cases is the fact that in many, if not most, instances the defendant will be an attorney. The majority suggests that many attorneys would likely develop a specialty in this

type of case and perhaps file them as a matter of course. If the attorneys of this state are such that they will indiscriminately file groundless suits against other attorneys—and we have no reason whatsoever to believe this is true—one would expect that they would be no less hesitant to file groundless lawsuits against members of other professions. Thus, if the majority's speculation as to this propensity of attorneys is warranted, it seems to argue even more persuasively that the general public needs some sort of effective remedy.

If we are to give substance to DR 7-102(A), subds (1) and (2), which establishes an attorney's duty to the public not to bring frivolous litigation, a viable malicious prosecution action is necessary.

## III

In conclusion, this Court's concern should be for preserving free access to the courts *for meritorious claims.* The majority, by protecting meritorious and frivolous claims alike, has denied free access to the courts for all those who have suffered harm but no "special injury" from wrongful litigation.

I would affirm the Court of Appeals.

FITZGERALD, J., concurred with COLEMAN, C.J.

BLAIR MOODY, JR., J. *(dissenting in part).* I agree with the analysis employed and the result reached by the opinion of the Court, except for part IV which deals with a cause of action for malicious prosecution of civil proceedings.

The opinion of the majority holds that a claim for malicious prosecution may not be asserted in the absence of the element of special injury and that the plaintiff failed to plead this element of the tort. Because approval of an action for mali-

cious prosecution of civil proceedings, without requiring the element of special injury, would be appropriate and provide fair and sufficient redress to the issue presented in this case, I dissent.

## A

In determining the proper elements of an action for malicious prosecution of civil proceedings, our Court today is not bound by explicit decisions that require assertion of the element of special injury. The scholarly opinion of my colleague most appropriately recounts the history of the "English rule" and the split in American jurisdictions between adoption of that rule and the "American rule" relating to a cause of action for malicious prosecution.

In Michigan, our decisions reveal that this Court has not distinctly recognized a cause of action for malicious prosecution without special injury. Likewise, the cases cited in my colleague's opinion do not indicate a specific adoption by this Court of the "English rule" with its special injury requirement or a specific rejection of the "American rule", which allows recovery without a showing of special injury.

In this regard, in avoidance of an explicit determination, our Court in *Brand v Hinchman,* 68 Mich 590; 36 NW 664 (1888), previously expanded the concept of special injury by approving a cause of action involving a *technical* taking and possession of a plantiff's property. Justice MORSE, the author of *Brand,* expressed his individual opinion that recovery should not be limited to a showing of special injury. The other Justices, however, deemed such a holding not necessary to decision.

In *Powers v Houghton,* 159 Mich 372; 123 NW

1108 (1909), this Court recognized that the "English rule" had been modified and the definition of special injury was broadened in American jurisdictions. In *Powers,* the plaintiff sought "to recover damages for the malicious prosecution of a civil action, by which he was deprived of neither his liberty, reputation, nor property, but simply of the possession of property belonging to another". 159 Mich 373. The Court reversed a judgment in favor of the plaintiff on the narrow ground that it was "unable to find a single adjudicated case * * * where it is held that the defendant in a replevin suit, having no property in the goods taken, may maintain an action for malicious prosecution against the unsuccessful plaintiff in the original action". 159 Mich 374. Whether Michigan followed the special injury requirement or the broader view espoused by Justice MORSE remained undecided. Cases following *Brand* and *Powers* all involved situations that fit into a somewhat expanded concept of special injury.[1] Thus, it appears we are left

[1] *E.g., Krzyszke v Kamin,* 163 Mich 290; 128 NW 190 (1910) (injunction), *Rowbotham v Detroit Automobile Inter-Ins Exchange,* 69 Mich App 142; 244 NW2d 389 (1976) (deprivation of automobile operator's license).

The Michigan cases discussed in the majority opinion involve some special injury equivalent to a seizure of or interference with property. Other jurisdictions add to the arrest or seizure of property elements of the definition of special injury some other special injury "not necessarily resulting in any and all suits prosecuted to recover for like causes of action". *Schwartz v Schwartz,* 366 Ill 247, 250; 8 NE2d 668 (1937). See also *Ring v Ring,* 102 RI 112; 228 A2d 582 (1967); *Buck v Gale,* 271 Or 90; 530 P2d 1248 (1975); *Brody v Ruby,* 267 NW2d 902 (Iowa, 1978).

Plaintiff Friedman's complaint states:

"That as a direct and proximate result of the negligence, malicious prosecution and abuse of process of these defendants, the plaintiff, Seymour Friedman, M.D., has endured grievous damages, including, but not limited to, the following: the cost of defending the aforesaid cause and the appeal, an increase in his annual malpractice insurance premiums for so long as he practices medicine, the loss of two young associates from his office who could no longer afford to pay the increased malpractice insurance premiums thereby requiring him to

today without a specific adoption or rejection of
the special injury requirement.

The duty to interpret the common law in light
of present circumstances and changed conditions
rests with this Court. Even if the special injury
condition may be considered to be a part of our
jurisprudence, this Court may abrogate common-
law rules.[2] Today, this Court is presented with the
opportunity to adopt or reject the special injury
requirement in Michigan law.

## B

Admittedly, the special injury condition of the
"English rule" limits the recovery potential for
malicious prosecution of civil proceedings and
thereby protects the right of free access to the
courts. However, the limitation is too broad. Suits
arising out of meritorious as well as vexatious
actions are disallowed. The special injury require-
ment is not logically related to the actual damages
incurred by the defendant as a result of a frivolous
suit. The injury to reputation or business flowing
from any defamatory matter alleged as the basis
of the proceedings,[3] and the expense of defending a

---

work excessive hours without relief, damages to his reputation as a
physician and surgeon, embarrassment and continued mental an-
guish."

The majority holds that the complaint does not allege special
injury. Cf. *Mills County State Bank v Roure,* 291 NW2d 1 (Iowa, 1980)
(loss of medical practice or business income sufficiently alleges special
injury).

[2] "[T]he general rule is that the common law prevails except as
abrogated by the Constitution, the Legislature or this Court. Const
1963, art 3, § 7." *People v Aaron,* 409 Mich 672, 722; 299 NW2d 304
(1980).

Even if the "English rule" has been the common law in Michigan,
it should be abrogated. Legal scholars and historians are left to decide
whether the pure "English rule", a modified "English rule", or some
other rule, if any, stated the common law in this jurisdiction.

[3] 3 Restatement Torts, 2d, § 681(b), p 469.

lawsuit which was brought without probable cause
and for an improper purpose do not depend upon a
technical interference with person or property.
The storekeeper whose property is attached for a
few moments certainly suffers no greater injury or
harm than the individual whose reputation is
tarnished or who suffers a loss of business as a
result of a truly vexatious lawsuit.

Furthermore, the requirement of an arrest or
seizure of property is in large part an anachronis-
tic one. At an earlier time many actions could be
commenced by a writ of *capias ad respondendum.*
That writ permitted a civil action to be started by
the arrest of the defendant. See Black's Law Dic-
tionary (4th ed), p 262. In Michigan certain con-
tract actions and apparently all tort actions could,
upon a proper declaration and affidavit, be started
by a writ of *capias ad respondendum. Kirker v
Larson,* 254 Mich 648; 236 NW 896 (1931). RJA
§ 1815 abolished this writ and provides that "no
civil actions shall be started by arrest". Civil ar-
rest is now a limited concept and rarely applicable.
See 35 MCLA, RJA Practice Commentary, pp 238-
240, Committee Comment, pp 240-242.

The law concerning attachment and garnish-
ment has also changed. See *Fuentes v Shevin,* 407
US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972). The
Legislature has abolished, in most situations, at-
tachment and garnishment as prejudgment secu-
rity devices. 1974 PA 371.

Thus, the likelihood of special injury, as defined
by the majority, occurring in a lawsuit brought
today is greatly reduced. The element of special
injury is now likely to occur in only a limited class
and number of cases.

The views of Justice MORSE written almost a
century ago are pertinent today:

"The common law declares that for every injury there is a remedy. Especially is this so where the injury is malicious. If a man is injured in his credit and reputation, and his business lessened or broken up, it can make no difference, in his right to recover for such injury, that his person or property has not been manually seized or disturbed." *Brand, supra,* 597-598.

## C

The strict requirements of lack of probable cause and malice, *i.e.,* improper purpose, are more appropriate guardians of free access to the courts and of promoting the honest use of the judicial process than the artificial requirement of special injury. The elements of the tort of malicious prosecution of civil proceedings include:

1. A civil proceeding instituted, continued or procured by one person against another.

2. Termination of the proceeding in favor of the person against whom it is brought, except for an ex parte proceeding.

3. Absence of probable cause for bringing or continuing the proceeding.

4. Malice or a primary purpose other than that of securing the proper adjudication of the claim on which the proceeding is based.

5. Proof of injury resulting in damages.[4]

Many American jurisdictions,[5] commentators,[6]

---

[4] See Prosser, Torts (4th ed), § 120, pp 850-856; 3 Restatement Torts, 2d, §§ 674, 681, pp 452, 469. The Restatement term for this tort is wrongful use of civil proceedings.

The instant case does not present the issue of "wrongful defense" of civil proceedings. The determination of that issue should be made in the proper case or within the rule-making process of this Court. However, a counter-plaintiff should be subject to the same standards as a plaintiff.

[5] See, *e.g.,* 52 Am Jur 2d, Malicious Prosecution, § 10, p 193. See also fn 24 of the majority opinion.

[6] *E.g.,* Prosser, Torts (4th ed), § 120, p 851; Birnbaum, *Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medi-*

the American Law Institute[7] and amicus State Bar
of Michigan recognize that the elements of lack of
probable cause and malice provide the necessary
protection to attorneys and litigants seeking access
to the judicial system, while, at the same time,
they allow proper redress for vexatious litigation.

The instant case involves a suit against the
opposing attorneys in an earlier malpractice ac-
tion. Attorneys are the agents who provide the
necessary expertise for clients who wish to litigate
their rightful claims. Lawyers have an obligation
to aid laypersons in obtaining access to the courts.
The delicate relationship among attorneys, clients,
and our judicial system requires careful definition
of the elements of absence of probable cause and
improper purpose when attorneys are sued for
malicious prosecution.

The American Law Institute supplies an appro-
priate basic standard to determine probable cause:

"One who takes an active part in the initiation,
continuation or procurement of civil proceedings
against another has probable cause for doing so if he

---

*cal Malpractice Actions,* 45 Fordham L Rev 1003, 1090 (1977); Jen-
nings, Comment, *Promoting Recovery by Claimants in Iowa Malicious
Prosecution Actions,* 64 Iowa L Rev 408, 418 (1979). See Kisner, Note,
*Malicious Prosecution: An Effective Attack on Spurious Medical
Malpractice Claims?,* 26 Case Western Reserve L Rev 653, 662 (1976).

[7] 3 Restatement Torts, 2d, § 674, comment *e,* pp 454-455:

"[I]n order to recover under the rule stated in this Section, the
plaintiff must prove something more than the mere fact that the civil
proceedings have been initiated without probable cause and for an
improper purpose and have terminated in his favor. He must show
either material harm or the violation of a legal right that is in itself
sufficient to support an action for damages. Among the latter are the
imprisonment of the person against whom the proceedings are
brought, the deprivation of his possession of land, chattels or intangi-
ble things, or the harm to his reputation, assumed to result from the
defamatory nature of the facts alleged as the basis of the proceedings
against him. Among the material harms are the harm resulting from
the interference with the use, enjoyment or vendibility of his land,
chattels or intangible things, and the expenditures reasonably neces-
sary to defend himself against the proceedings."

reasonably believes in the existence of the facts upon which the claim is based, and either

"(a) correctly or reasonably believes that under those facts the claim *may* be valid under the applicable law, or

"(b) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information." (Emphasis added.) 3 Restatement Torts, 2d, § 675, pp 457-458.

This standard of reasonable belief is applicable to the attorney for a plaintiff. Probable cause will be found for bringing or continuing the original action unless counsel proceeded with the knowledge that the client's claim had no factual or legal basis. There should be no requirement that an attorney investigate a claim if the lawyer could reasonably believe the facts to be as alleged by the client. The decision to forego adopting a general obligation for reasonable investigation is guided by a lawyer's duty to the profession and his or her client. "A lawyer should assist the legal profession in fulfilling its duty to make legal counsel available." Code of Professional Responsibility and Canons, Canon 2. In complying with this canon an attorney should be prepared to represent clients with doubtful, but tenable, claims. "A lawyer should represent a client zealously within the bounds of the law." Canon 7.

Futhermore, an attorney must not be required to expend substantial funds to investigate every case upon the threat of being held liable in a subsequent suit for wrongful use of civil proceedings. This threat of liability must not force an attorney to choose between advancing substantial costs for a client with a tenable and meritorious, but less than solid, claim and refusing to take a

case with some merit, but with potentially high costs.[8]

To enhance free access to our courts for litigants and attorneys to bring tenable claims which, for example, may seek to expand the common law, it is necessary in actions for malicious prosecution of civil proceedings, as in actions for malicious (criminal) prosecution, to carefully delineate the functions of judge and jury, particularly in determining probable cause.

"The respective functions of court and jury in actions for malicious prosecution differ in one important particular from their respective functions in other actions of tort in which, as in actions for negligence, the liability of the defendant depends upon the unreasonable character of his conduct. In passing upon this question someone must determine what the defendant did or failed to do and the circumstances under which his act or omission occurred; and someone, either court or jury, must determine whether, in the light of these circumstances, his conduct measured up to the standard of a reasonable man. In actions for negligence and other tort actions in which the liability of a defendant depends upon the unreasonable character of his conduct, both of these matters are determined by the jury * * *.

"In actions for malicious prosecution, however, upon the [issue] of * * * probable cause, the jury has only the function of finding the circumstances under which the defendant acted. The court determines whether, under those circumstances, * * * the defendant had or had not probable cause. If there is no conflict in the testimony as to what the circumstances were, the court has no need for a finding of the jury. The jury is not called upon to act unless there is a conflict in the

[8] Code of Professional Responsibility and Canons, DR 5-103(B) permits an attorney to advance the costs of litigation if the client remains ultimately liable for the costs. In a medical malpractice case the expense of investigation and obtaining expert evaluations is often a substantial burden. Whether these costs are expended should be determined by the requirements of developing the case, not by the threat of a later lawsuit.

testimony that presents an issue of fact for its determination.

\* \* \*

"The better \* \* \* method [in determining the issue of probable cause] is to require the jury to find a special verdict setting forth the circumstances under which they find that the proceedings were initiated. Upon these findings the court then determines whether the defendant had probable cause."[9]

Thus, the jury resolves any conflict in the underlying facts on the issue of probable cause. Once the conflict is resolved, the judge determines whether the facts as found by the jury constitute probable cause. If the facts underlying an attorney's reasonable belief are not in dispute, the judge decides the issue of probable cause.

The element of improper purpose must also be appropriately defined. When a party is sued for malicious prosecution, a jury may infer malice from an absence of probable cause. See, *e.g., Renda v International Union, UAW,* 366 Mich 58, 99-100; 114 NW2d 343 (1962). To permit a jury to infer malice or improper purpose may be appropriate when the defendant is a layperson. However, as explained in 3 Restatement Torts, 2d, § 674, comment *d,* p 453, it is necessary to make an independent determination of improper purpose when the defendant is the attorney who initiated the original action:

"An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable cause for his action (see § 675); *and even if he has no probable cause*

---

[9] 3 Restatement Torts, 2d, § 673, comment *e,* pp 449-450. See also § 681B, pp 472-473. Michigan cases have required careful instruction to the jury concerning probable cause. *E.g., Wilson v Bowen,* 64 Mich 133; 31 NW 81 (1887).

*and is convinced that his client's claim in unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim.* (See § 676.) An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances." (Emphasis added.)

The lawyer's duty to press his client's claim requires this independent evaluation of improper purpose.[10]

For these reasons, the requirement of special injury should be eliminated. The requirements of lack of probable cause and improper purpose coupled with the respective functions of judge and jury strike a proper balance between unfettered access to the courts for those with tenable claims and the need to redress the harm caused by an abuse of our judicial system.

# D

As an alternative to a malicious prosecution claim, an ancillary proceeding to occur immediately after judgment in the original action is suggested in a concurring opinion. Such a proposal would offer the advantages of control, availability and efficiency.

However, it may also be anticipated that this procedure could create the potential of adding an ancillary issue to every lawsuit, increase docket congestion, precipitate a conflict of interest between attorney and client, and grant too much power to the trial judge, thereby placing a pre-

---

[10] A contingent-fee arrangement is not an improper purpose. 3 Restatement Torts, 2d, § 674, comment *d,* p 453.

mium on "judge shopping". The ease of accessibility of such a procedure may increase the likelihood of the prevailing party filing an ancillary proceeding. It could encourage, without reflection or thought, retaliatory claims. Also, since this alternative suggestion would apply to defendant and plaintiff alike, it raises an issue concerning the concept of what is an appropriate defense.

These comments are made only for the purpose of raising initial questions regarding the suggested alternative. This case, nevertheless, raises an issue of significance that should be determined on its own merits.

This case, therefore, should be remanded to the trial court. The trial court erroneously ruled that the denial of the motion for costs pursuant to GCR 1963, 111.6 in the prior malpractice action determined the question of probable cause. The trial court did not rule upon the question of the factual dispute.

Accordingly, I would affirm the judgment of the Court of Appeals and remand this cause for further proceedings not inconsistent with this opinion.